[No. 928. Decided November 11, 1893.]

THE STATE OF WASHINGTON, *Respondent,* v. THOMAS WALTERS, *Appellant.*

WITNESS — IMPEACHMENT — CONSTITUTIONAL LAW — JUDICIAL COMMENT ON FACTS — POSSESSION OF RECENTLY STOLEN PROPERTY.

It is not error to allow impeaching testimony when a witness has been asked if he had a conversation with a certain person at a given saloon in the month of July in reference to the case, and if he did not at that time make certain statements, which counsel repeated and which the witness denied that he made, as the witness' attention must have been so directed to the particular statements in regard to which he was interrogated that he was in no way prejudiced, although the exact time was not called to his attention.

The remark of a trial judge, while attempting to convey to the minds of the jury that it is not necessary to prove that a crime was committed on the exact day alleged in the information, that "it is only necessary to allege the date in order to identify the crime," does not assume that a crime has been committed.

All remarks and observations by the court in charging the jury, as to the facts before them, are positively prohibited by art. 4, § 16 of the state constitution, and will be cause for reversal, unless it appears that the accused was in nowise prejudiced thereby. (SCOTT and HOYT, JJ., dissent.)

The possession of recently stolen property is a circumstance to be considered by the jury in connection with all the other evidence in the given case in determining the guilt or innocence of the accused; and the presumption that may be drawn from such possession is one of fact merely, and is to be determined by the jury alone.

*Appeal from Superior Court, Lincoln County.*

*N. T. Caton*, and *C. S. Voorhees (Jones, Voorhees & Stephens*, of counsel), for appellant.

*J. W. Merritt*, and *James A. Haight*, for The State.

The opinion of the court was delivered by

ANDERS, J.—On the trial of an information charging the defendant and one George Gibbons with the crime of horse stealing, the defendant, having been separately tried, was convicted and sentenced to imprisonment in the state penitentiary for the term of five years. He brings the cause to this court for review upon exceptions reserved and errors assigned.

The alleged errors relate mainly to the instructions given by the court to the jury, but objection is made to the decision of the court in overruling appellant's objection to the evidence of one Vent, offered for the purpose of impeaching William Johnson, on the ground that no proper foundation had been laid for the introduction of such testimony. When Johnson was on the witness stand he was asked if he remembered having a conversation with Mr. Vent down in what is known as Jim Campbell's saloon last July, in reference to this case, and if he did not then make certain statements, which counsel for the state repeated and which the witness denied that he made. Subsequently Vent was called as a witness and interrogated as to what Johnson said in the conversation alluded to. The court permitted the witness, over appellant's objection, to detail certain statements which he testified Johnson made to him

at this saloon, and which were substantially the same state-
ments that Johnson denied having made. It is claimed
on behalf of the appellant, that "time, place and circum-
stance" were by no means sufficiently indicated in the
question propounded to Johnson to justify the admission
of the testimony given. While the particular circumstances
and the exact time of the supposed conversation were not
called to the attention of the witness on his cross examina-
tion, still we think his attention must have been so directed
to the particular statements in regard to which he was
interrogated, that he was, in no way, prejudiced or harmed
by the ruling of the court. The record shows that the
objection made by the defendant at the trial was, that the
*time* of the alleged conversation was not sufficiently speci-
fied, not that the "place and circumstance" were not
designated. It may be that the exact hour or day of the
week or month was unknown, yet the court would not have
been justified, under such circumstances, in rejecting the
testimony on that ground alone.

We come now to the consideration of those portions of
the court's charge to the jury which appellant claims were
erroneous and which legally entitle him to a new trial.
While attempting to convey to the minds of the jury that
it was not necessary to prove that a crime was committed
on the exact day alleged in the information, but that the
proof of any time within the statute of limitations would be
sufficient, the trial judge remarked that "it is only neces-
sary to allege the date in order to identify the crime."
The objection made to this language is that the court
thereby assumed and so told the jury that a crime had
been committed. The remark was a general one, and no
doubt was not intended by the judge as an expression of
his opinion upon the weight or effect of the evidence in the
case before him. Nor do we think the jury could have
understood the court as saying, or intending to say, that

the crime charged in the information, or any crime, had been committed. While the expression was perhaps not as apt as it might have been, the idea evidently intended to be conveyed was, that it was only necessary to allege a date in an information in order to show that the acts constituting the crime, as therein set forth, were done at some time within the statute of limitations—and thus to "identify" the crime charged—as one for which the accused might be legally tried.

The following instruction is also complained of by the appellant:

"But if the defendant was not guilty, and if you find from the testimony that he was not assisting in the theft of the horses stolen by Gibbons, then he would not be guilty of the offense charged in the information simply by reason of his assisting Gibbons in shipping the horses out of the country."

It appears by the testimony of Gibbons that he himself had been convicted of the theft of the horses, and that the appellant was likewise concerned in the larceny, and assisted him, Gibbons, in shipping the stolen horses to the State of Illinois; but it also appears that Gibbons admitted on cross examination that while testifying in his own behalf on his trial for stealing these same horses, he then swore, in substance, that appellant had nothing to do with the larceny, but that what he then testified to was not true. If it was necessary, in order to determine the guilt of the defendant, to show that Gibbons stole the horses and that the defendant merely assisted him, in some way, in so doing—and that seems to have been the theory of the prosecution— then it was improper for the court to say to the jury, directly or indirectly, that Gibbons stole the horses in controversy, or that the defendant assisted him in shipping them out of the country. The language of the learned judge shows that he assumed, as proven, the existence of

facts which it was the exclusive province of the jury to determine from the testimony adduced before them, and this we think was error.

The court, in its charge to the jury, also said:

"In this case, if you believe from the evidence that prior to the commission of the crime alleged in the information, the defendant had always borne a good reputation, good character for honesty among his neighbors, in the neighborhood where he lived, then this is a fact proper to be considered by you in determining whether or not the witnesses who have testified to facts tending to criminate him have been mistaken, or have testified falsely or truthfully."

Here again the learned judge invaded the province of the jury and commented on the facts of the case sufficiently to convey to their minds that, in his opinion, witnesses had testified to facts tending to criminate the defendant. In our judgment, this statement was not only violative of the constitutional provision that "judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law," (§ 16, art. 4, State Con.), but may have been highly prejudicial to the defendant. It is doubtless true that, in jurisdictions where the judges are permitted to state the facts and to sum up the evidence, such instructions as that now under consideration would not be deemed erroneous, but, where the "supreme law" declares that judges shall not charge juries with respect to matters of fact, nor even comment thereon, the rule must be different. It is not the *quantum* of any particular comment, but all comment whatever, that is inhibited by the constitution; and, therefore, courts should be extremely careful to confine their instructions solely to declaring the law. All remarks and observations as to the facts before the jury are positively prohibited, and if any such are made, the judgment will be reversed unless the appellate court can see that the accused was in no wise prejudiced thereby.

Upon the question of the possession of recently stolen property, the court charged the jury as follows:

"I instruct you further that the possession of recently stolen property is regarded in law as a criminating circumstance, tending to show that the possessor stole the property, unless the facts and circumstances surrounding or connected with said possession, or other evidence, explains or shows said possession might have been acquired honestly. In this case, if the jury believe from the evidence, beyond a reasonable doubt, that the property described in the information was stolen, and that the defendant was found in possession of the property soon after it was stolen, then said possession is in law a criminating circumstance, tending to show the guilt of the defendant, unless the evidence, and the facts and circumstances proved, show that he may have come honestly in possession of it."

It is contended on behalf of the appellant that the court in thus instructing the jury, not only commented on the facts in evidence, but failed to declare the law correctly. And we are of the opinion that the instruction is, in a great measure, open to the criticism made by counsel.

The possession of recently stolen property may or may not be a criminating circumstance, and whether it is or not depends upon the facts and circumstances connected with such possession. It is a circumstance to be considered by the jury in connection with all the other evidence in the given case, in determining the guilt or innocence of the accused; and its weight, as evidence, like that of any other fact, is to be determined by them alone. *People v. Chambers*, 18 Cal. 383; *People v. Ah Ki*, 20 Cal. 178; *People v. Noregea*, 48 Cal. 123; *State v. Humason*, 5 Wash. 499 (32 Pac. Rep. 111); *Watkins v. State*, 2 Tex. App. 73.

Any presumption that may be drawn from such possession is a presumption of fact merely; in other words, it is only an inference that one fact may exist from the proof of another, and does not amount to a rule of law. Whart. Cr. Ev. 758; *Smith v. State*, 58 Ind. 340; *State v. Hodge*,

*50 N. H. 510; 3 Greenl. Ev., § 31; Ingalls v. State,* 48 Wis. 656 (4 N. W. Rep. 785); Bishop, Cr. Proc., § 745.

The judgment of the lower court is reversed, and the cause remanded for a new trial.

Dunbar, C. J., and Stiles, J., concur.

Scott, J. (*dissenting*).—I think the court has given a wrong and altogether too rigid an interpretation of the constitutional provision prohibiting judges from charging juries with respect to matters of fact or commenting thereon, and one that will seriously embarrass the lower courts in the trials of causes.

The object and intent of this provision is to prevent the judge from conveying his opinion of the truthfulness or untruthfulness of any part of the testimony to the jury, but not to prevent him from, in guarded language, instructing the jury what may be the legal effect of testimony, if believed by them, or what credit it may or may not be entitled to as matter of law, nor from incidentally alluding to admitted facts.

The strict interpretation here given is sustained by the courts of Texas, but I believe not elsewhere. The Texas provision is, that the judge "shall not express any opinion as to the weight of the evidence, nor shall he sum up the testimony." *Parrish v. State,* 45 Tex. 54. Ours is, that "judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." It may be that ours is the more strict of the two, yet the evident intention is to prevent the judge from influencing the jury in finding as to the truthfulness of particular testimony. Now he must declare the law, and the particular law declared must be with reference to the facts proved in the particular case, and must of necessity be in a measure a charge with respect to matters of fact.

It may be that the instruction complained of, relating

to the recent possession of stolen property, was not aptly framed, yet, in the light of the whole charge, I do not think it was erroneous. It should not be held error for the court to instruct the jury that the recent possession of stolen property, if unexplained, is a circumstance tending to show the guilt of the defendant — something that is universally conceded. The jury are left free to find as to the truthfulness of the testimony, and as to the weight that should be attached to it. Such an instruction, instead of commenting upon the facts, is rather declaring the law upon the facts, or informing the jury what the legal effect of certain testimony is, or may be, or what authority they have a right to attach to it as a matter of law. It is not a comment on the facts. Comment, as used here, means something in the nature of a criticism. If such an instruction is obnoxious to this provision, it is because it is a charge with respect to matters of fact. The provision of the California constitution is, that "judges shall not charge juries with respect to matters of fact, but may state the testimony and declare the law." Sec. 19, art. 6. And in that state a charge that the recent possession of stolen property is a circumstance tending to show guilt, is authorized. *People v. Fagan*, 66 Cal. 534 (6 Pac. Rep. 394). It cannot be maintained that it is so because of the provision permitting judges to state the testimony, for it is not a stating of the testimony, nor does it purport to be. Such a charge can gain no additional sanction from this provision, and the other provision preventing judges from charging with respect to matters of fact is identical with ours. A judge would not be authorized to comment upon or criticise the testimony in California. He may state it, but otherwise the prohibition is fully as strong as our own, and if such a charge can be authorized under one of said constitutional provisions it can be under the other. The sole purpose of such a provision is to prevent judges

from charging juries with respect to matters of fact in such a way as to influence them in finding as to the truthfulness of the testimony. A literal, rigid enforcement of this provision, as viewed by the majority, will revolutionize the system of trials. Under such a strict interpretation as will prevent a judge from alluding to the facts, he would not be authorized to instruct the jury that the recent possession of stolen property should be considered with reference to the explanation offered therefor by the defendant; or to instruct them what effect certain testimony would not be entitled to have. For instance, that the recent possession of stolen property, if unexplained, is not alone sufficient to justify conviction. And yet this is the rule adopted in some of the states and here. *State v. Humason*, 5 Wash. 499 ( 32 Pac. Rep. 111 ).

Scarcely a criminal case is brought here that does not embrace some such kindred proposition that the defendant has requested the court to charge upon as to the effect of certain testimony, and which the court has given without question.

For instance, that flight shall not be taken as conclusive evidence of guilt; or that the fact of flight shall be considered in connection with certain mitigating circumstances specified; or that circumstantial evidence, to justify conviction, must be incompatible with any reasonable hypothesis of the innocence of the accused; or where a witness has been proven to have testified falsely in one material matter, that the jury may disregard his testimony entirely, excepting as corroborated by other credible evidence. And the same is true in a large degree of civil causes, as the last instance specified would apply to such. Also with respect to charges upon negligence—that certain things if proved may be evidence of negligence, or may establish it, or the contrary.

It is as much charging with respect to matters of fact

for the judge to tell the jury what effect certain testimony is not entitled to have, or, under certain circumstances as they may find, it is not entitled to have, as it is for him to tell them what effect they have a right to attach to it; and if the judge is prohibited from saying one, he is necessarily prohibited from saying the other. Thus the guidance afforded by well settled legal principles is practically taken away from juries, at least to a very large extent, in considering testimony bearing upon issues submitted to them. In many instances the rights of litigants will thereby be jeopardized and subjected to the unguided, mistaken judgment of juries, although conscientiously undertaking to arrive at the truth, and solely because of their having no information as to the effect which certain classes of testimony may or should not have. Legal proceedings are thereby rendered much more uncertain, for different juries would undoubtedly attach varying degrees of importance to the same identical facts and circumstances which they might find to be conclusively proven. The same facts should mean the same thing in every trial under the same circumstances and conditions, and should be entitled to just the same consideration. This is true of all the matters above enumerated, and to prevent the judge from furnishing the jury with any information as to these matters, which even may be universally conceded to be established, is to remove those barriers and landmarks of safety which the law in its wisdom, and the experience of ages, has thrown around trials in both civil and criminal actions. While juries should be left to find the facts in all cases, unbiased by any opinion of the judge as to the truthfulness or untruthfulness of any part of the testimony, it should be under such general instructions as to always lead them to give the same consideration, as far as practicable, to the same facts and circumstances in one case as in another of the same class. If the court is not permitted to throw such light

in a general way upon the evidence as the law gives, beyond a declaration of such matters of law as have no possible bearing upon some particular part of the testimony, juries are left to grope in the dark largely, and their verdicts to chance and uncertainty in a much greater degree than ever.

In *Hodde v. State*, 8 Tex. App. 384, a charge that "circumstantial evidence, like all other evidence, should be examined with great care, but that when circumstances constituting the chain of evidence are properly and closely linked together, and are consistent with themselves and with the principal fact in issue, it is capable of leading the mind to very satisfactory conclusions," was held to be error, as in conflict with the provision mentioned, although the court stated that the general rule as laid down in the instruction might be considered as axiomatic.

And in *Merritt v. State*, 2 Tex. App. 182, it was held error under said provision for the court to tell the jury that —

"You are at liberty to consider the several statements made by the defendant as to the manner in which he came in possession of it [stolen property], in order to enable you to arrive at the guilt or innocence of the defendant, and if said statements appear to be reasonable and consistent, it is a circumstance in his favor, and if said statements are unreasonable and false, it is a circumstance against him."

And this is what a literal and strict interpretation of our constitutional provision means. It seems to me unnecessary that it should be given such. It can and should be interpreted solely in the way of prohibiting judges from charging or commenting upon the testimony with relation to its truthfulness or untruthfulness. An absolute prohibition of all reference to the facts is a harsh interpretation of it, and much further than it is desirable to go.

I do not think any of the grounds upon which error is founded in the majority opinion are well taken. It was

a conceded fact upon the trial that Gibbons had stolen the horses; no one questioned this, and the fact that the court incidentally alluded to them as having been stolen by him should not be held violative of this provision, it being an admitted fact, and I do not see how such reference could have prejudiced the defendant. Nor could there be any possible question but that the matters testified to by the witnesses, if true, did tend to criminate the defendant. This was apparent to every one, and the allusion thereto, consequently, was harmless. The question was, whether they were to be believed or not, and this was left open for the jury to pass upon.

Hoyt, J., concurs in the above.