[No. 3259. Decided December 29, 1900.]

THE STATE OF WASHINGTON, *Respondent*, v. HENRY
SURRY, *Appellant*.

TRIAL—JUDICIAL COMMENT ON EVIDENCE.

Remarks of the court as to facts in the case, addressed not
to the jury, but to counsel, in passing upon propositions of the
latter for the introduction of testimony, or in reply to sugges-
tions concerning testimony, are not in violation of art. 4, § 16,
of the constitution, which prohibits judicial comment on the
facts, especially when the court cautions the jury to pay no
attention to what passes between him and counsel.

ASSAULT WITH DEADLY WEAPON—REJECTION OF EVIDENCE—HARM-
LESS ERROR.

In the prosecution of a police officer for shooting the prose-
cuting witness, whom he was pursuing in an attempt to make
an arrest, where the defense was that he did not shoot at such
person with intent of hitting him, but shot at the sidewalk to
frighten him and he must have been struck by a glancing ball,
it is harmless, if error at all, for the court to refuse the admis-
sion in evidence of a cartridge similar to the one which defend-
ant had fired, for the purpose of showing that a ball propelled
by such a charge of powder as the cartridge contained would
have inflicted greater injury than that suffered by the prosecut-
ing witness, if it had not been impeded in its course by striking
some solid substance, when the defendant has already testified
that the revolver "shoots almost like a rifle," and that in tests
made by him, a shot from it when loaded with such a cartridge
would penetrate a two and one-half inch fir plank at a distance
of 150 feet, and then go about half a mile further.

SAME—EVIDENCE—CHARACTER.

In the prosecution of a police officer for shooting a suspected
person whom he was attempting to arrest, it is not competent
to prove defendant's reputation as a careful, conservative, and
conscientious peace officer in the community in which he re-
sides, since defendant's character as an individual, and not as a
peace officer, was involved in the offense charged against him.

INSTRUCTIONS—MISLEADING STATEMENTS—CONSTRUCTION AS A WHOLE.

Where the instructions, as a whole, clearly and correctly state the law of the case to the jury, the fact that a sentence is so obscure as to be capable of two constructions does not constitute prejudicial error, when it is manifest from other portions of the instruction what meaning should be attached to it.

SAME—RELEVANCY TO EVIDENCE.

In the prosecution of a police officer for shooting a person whom he suspected of having committed a crime and whom he was attempting to arrest, an instruction by the court on the right to arrest without warrant is not erroneous on the ground of being inapplicable to the evidence in the case.

Appeal from Superior Court, King County.—Hon. ORANGE JACOBS, Judge. Affirmed.

*William Parmerlee,* for appellant.

*James F. McElroy,* Prosecuting Attorney, *John B. Hart* and *Walter S. Fulton,* for the State.

The opinion of the court was delivered by

ANDERS, J.—The appellant was charged by information, under § 23 of Hill's Penal Code (Bal. Code, § 7058) with an assault with a deadly weapon (a revolver) upon one Edward May, with intent to do bodily injury, no considerable provocation appearing therefor. On the trial upon the information, the jury returned a verdict of guilty of assault and battery, and the court, after denying his motion for a new trial, sentenced the appellant to pay a fine and to imprisonment in the county jail. It appears from the record that about two o'clock on the morning of October 7, 1898, the appellant, who was then a "merchants' patrolman" and deputy sheriff, and two police officers, discovered the prosecuting witness, Edward May, then a youth of the age of seventeen years, together with three companions, in or about a vacant lot near Madison street and Second av-

enue, in the city of Seattle.   Suspecting from their move-
ments that these four young persons were about to engage
in some unlawful transaction, appellant and the two police-
men concluded to apprehend them and ascertain what they
were doing at that place.   The vacant lot seems to have
been considerably lower than the adjacent street and side-
walk, and was approached by a flight of stairs or steps.
While the officers were looking at these boys, three of them
climbed over the fence into the adjoining vacant lot close
to a candy and cigar store, while the fourth remained upon
the sidewalk.   Immediately after the boys went over the
fence, the appellant and the policemen left the place where
they had been standing unobserved in the shadow of a
building, and went in search of them.   One of the officers
went down to the lot, and very soon thereafter the com-
plaining witness, May, came up the steps to the sidewalk
not far from where the appellant was standing, and ran
down Madison street towards First avenue.   The appellant
ran after him and, as he says, called upon him several times
to stop.   After he had pursued May for some distance with-
out overtaking him, appellant drew his revolver, while he
was running, and fired.   After firing the shot he continued
the pursuit for the distance of a block and a half, and
then gave up the chase.   May continued running until he
reached the residence of his mother, where he informed her
that he had been shot.   Physicians were immediately sum-
moned, and, upon examination, it was ascertained that the
bullet from the pistol struck May in the back part of the
thigh and, passing upward, lodged near the groin.

It is claimed by the appellant that the court erred in
commenting on the evidence in the presence of the jury.   It
was admitted by the appellant at the trial that he fired
the shot that struck May, but he claimed as a defense that
he did not shoot, or intend to shoot, at him; that he fired

at the sidewalk, and that. May's injury was caused by the accidental glancing of the ball. During the course of the trial, appellant, as a witness in his.own behalf, testified as to the size, style and penetrating power of the pistol fired by him on the morning in question, and stated that it "shoots almost like a rifle;" and thereupon his counsel proposed to introduce in evidence a cartridge like the one discharged from the revolver, for the purpose of showing that such a ball, having behind it such a charge of powder as the cartridge contained, and fired from such a powerful weapon, would penetrate a great deal further than the ball which struck May did, unless it met with some obstruction; and also to show further, "that this was a glancing shot and could not have come directly from the gun of Surry." Counsel for the state objected to the introduction of the cartridge in evidence for the alleged reason that it was irrelevant, immaterial and incompetent, and then proceeded to argue to the court that every one who has had experience with pistols and firearms knows that loaded cartridges of the same kind do not all shoot with equal strength; that some are strong, some weak, and others do not explode at all; whereupon counsel for appellant requested the court to direct the jury to disregard the statement of the prosecuting attorney as to his and other people's experience with balls of this kind, as being entirely unfounded, and an unwarranted statement, for the purpose of prejudicing the jury. At this juncture the court remarked: "I don't suppose the force of the ball changed its direction. I don't see anything so very improper about that at all. Your motion is refused." The court then observed: "The jury, anyhow, has no business to pay any attention to it;" and continuing: "I don't think the testimony is material or admissible to prove the facts. If that bullet struck the sidewalk, its motion was impeded. It is common knowledge, if that bullet struck the sidewalk its

motion was very much impeded, and on the same angle
that it went—the angle that it described after it left the
sidewalk would be precisely the same as the angle it made
from the mouth of the pistol." Counsel for appellant then
stated to the court: "The defendant desires to except to
the statement of the court made before the jury as to the
angle that might have been taken by the bullet, or as to its
motion, as a comment upon the evidence." Thereafter, on
cross-examination, appellant testified that there was prop-
erty on the vacant lot on the corner of Madison and Second
avenue (where the boys were) which he was employed to
watch, mentioning particularly Thedinga's hardware
store. Counsel for the state then asked him the question,
"What other property is there?" To which he replied,
"The Burke building—Burke block." Question: "And
you wish to tell this jury theBurke block is in this vacant
lot?" Answer: "It is adjoining the vacant lot—have to
go through the vacant lot to get to that property." Appel-
lant's counsel then objected to this line of cross-examina-
tion, and said to the court: "He has answered those ques-
tions that it was property adjoining the vacant lot he was
employed to watch—not necessarily in that lot. He has
testified to that time and time again. I don't know the
object of counsel in pressing the matter—a matter of this
kind that is so plain and fully understood by the jury."
In response to this objection the court said to counsel:
"Objection overruled. Witness stated several times about
buildings in the vacant lot. He has stated that there were
things in that vacant lot. Go ahead." These remarks of
the court were also objected to as a comment on the evi-
dence.

Section 16 of article 4 of the state constitution provides
that "judges shall not charge the jury with respect to mat-
ters of fact, nor comment thereon, but shall declare the
law," and this court has uniformly held that a violation of

this provision by the trial court necessitates a reversal of the judgment. See *State v. Walters,* 7 Wash. 246 (34 Pac. 938, 1098) ; *State v. Hyde,* 20 Wash. 234 (55 Pac. 49).

In both of these cases it will be observed the objectionable remarks were addressed to the jury, and hence were literally violative of the mandate of the constitution. Here the case is different, the observations objected to having been directed to counsel. We do not, however, wish to be understood as holding that a judge, under this provision, is at liberty, during the progress of a trial, to comment in the presence of the jury on the facts which the jury must determine, in a way calculated to influence their action; yet it is manifest, from the language of the constitution, that its primary and special object was to prevent comments on the facts in evidence in connection with the instructions by which the jury are to be guided, and at a time when such comments would be likely to affect their minds. Prior to the adoption of the constitution, it was said to be the custom of some of our judges, either inadvertently or purposely, to indicate their opinions as to the facts in cases before them in their instructions to the jury; and it seems to have been the object of the framers of the constitution, in formulating the provision in question, to correct this supposed evil. But we do not think it was intended by this provision to prevent the judges from giving counsel the reasons for their rulings upon questions presented during the progress of a trial, or to prohibit them, in all cases, from stating, when necessary, the facts upon which they base their conclusions.

In regard to the objection first made, that the court below erred in making the statement in the presence of the jury respecting the angle described by the bullet, if it struck the sidewalk, all we deem it necessary to say is (1) that, strictly speaking, the observations of the judge did not amount to a comment on the evidence, but simply to an

expression of his opinion as to "a well-known law of physics;" (2) that the remarks were directed solely to counsel for appellant, and were not intended to influence the jury or to be considered by them; and (3) that, if any possible error was thereby committed, it was cured by the statement of the judge at the time, in the presence, and presumably in the hearing of the jury, to the effect that the jury had no business to pay any attention to what was said.

Nor do we think that the learned counsel for the appellant has any substantial reason to complain of the declaration of the judge that "witness stated several times about buildings in the vacant lot. He has stated that there were things in that lot." Counsel, as we have seen, was objecting to the method pursued by the opposing counsel in cross-examining the witness, and was insisting that the witness had testified that it was property adjoining this lot—not in or on it—that he was employed to watch, and the remarks of the court which appellant's counsel now criticises were made in passing upon his objection and as a reason for the court's ruling. And in view of the further fact that the witness himself, almost immediately thereafter, testified that he had stated that the property he was referring to was on the vacant lot, but meant to say, and to be understood as saying, that it was next to, or adjoining the lot, we are unable to see how appellant could possibly have been prejudiced by the statement of the court. Had the statement under consideration been addressed to the jury when, or even before, the cause was submitted to them, the case would be different, and the rule announced in *State v. Walters* and *State v. Hyde, supra,* might reasonably be said to be applicable. While we are not disposed to overrule the prior decisions of this court as to the object and scope of this constitutional provision, we are not prepared to extend the rule enunciated in those cases so far as to hold that every casual, inadvertent or unnecessary

remark made by the judge in reply to a proposition or suggestion of counsel constitutes a sufficient ground for reversing the judgment. In our opinion, it is only such remarks of the presiding judge during the course of a trial as might reasonably influence the mind of an ordinary juror that can justly be said to be inimical to the constitution. And whether error has been committed in a given case must, therefore, depend upon the particular facts and circumstances therein disclosed.

At the trial the appellant offered in evidence a cartridge like that discharged from his revolver, but the court excluded it, and its ruling is assigned for error. It seems, as above indicated, that the object of the evidence offered was to show that a ball propelled by such a charge of powder as the cartridge apparently contained would have inflicted much greater injury than the one did which struck May, if it was not impeded or deflected from its course by striking some solid substance. Before the appellant proposed to introduce this cartridge in evidence, he had shown by his testimony that he had made tests of the power of the pistol when loaded with such a cartridge, and that it would penetrate a two and one-half inch fir plank at a distance of one hundred and fifty feet, and then go about half a mile further. Under this state of facts, it is not apparent that an examination of the cartridge by the jury would have cast any additional light upon the question whether May was struck by a point-blank shot or by a glancing ball. We think the evidence offered was properly excluded, but, even if it was not, its exclusion was not prejudicial to the appellant.

Complaint is made of the action of the court in refusing to permit the appellant to prove his reputation as a careful, conservative and conscientious peace officer in the community in which he resided; and it is insisted that the particular trait of character sought to be proved was in issue,

and hence admissible in evidence. But we are unable to assent to that proposition. It is a general rule in criminal cases that evidence of the character of the accused, when offered by him, is relevant and therefore admissible. But the character or reputation he is entitled to prove must always be such as would make it unlikely that he would commit the particular offense with which he is charged. Wharton, Criminal Evidence (9th ed.), § 60. In this case the appellant's character as a peace officer was not involved, but his character as an individual was involved in the offense charged against him, and therefore evidence of his reputation as a peaceable and quiet citizen in the community where he resided would have been admissible. But no such evidence was offered. *State v. King,* 78 Mo. 555.

The court, in its instructions as to the several offenses charged in the information and the proof necessary to a conviction, said to the jury:

"If you come to the conclusion from this testimony, or from the examination of this testimony, you have a reasonable doubt as to whether he intended to shoot this young man, why, you should acquit him of the higher offense; in other words, if you are satisfied that it was a mistake or accident, why probably you would have the right to find him not guilty of the highest offense stated. But that doctrine does not apply to the other offenses embraced in this information at all."

And it is urged that the court, by this instruction, virtually told the jury that they might find the defendant guilty, even though they found he acted without any criminal intent. If the above-quoted excerpt from the instruction constituted all that the court said with reference to the different offenses charged in the information and the proof necessary to sustain a conviction, there might perhaps be some force in appellant's contention. But, when the part objected to is read in connection with the whole

instruction, it does not appear to us that appellant has any just cause of complaint. The court had previously defined assault and assault and battery in the statutory language, and, at the time of making the statement complained of, was explaining to the jury what must be proved in order to find the defendant guilty of the highest offense charged in the information, and had already stated to them that, in cases of assault with intent to do bodily injury, there can be no implied intent, and that "the intent necessary to sustain a conviction must be an express and positive intent to do bodily injury and must be proved by competent testimony, like the other facts in the case." In order to show the applicability of the law as thus stated to the case in hand, the court told the jury that, if they were satisfied beyond a reasonable doubt that appellant did not intend to shoot May, or, in other words, if it was an accident or mistake, they should find him not guilty of the highest offense stated. It is true that the court also told the jury that "that doctrine does not apply to the other offenses embraced in this information." But obviously the doctrine referred to was simply what the court had stated, namely, that a specific intent to do bodily harm must be proved in order to convict the defendant of the highest crime stated, and it was not error to say to the jury that that doctrine is not applicable to cases of simple assault, or of assault and battery, because such intent is not of the essence of those offenses and need not be alleged in the information. 2 Bishop, New Criminal Law, § 60.

But we do not wish to be understood as saying that a crime may be committed without a criminal intent or by inevitable accident; for it is a well established rule that, to constitute a crime in law, there must be an act coupled with an evil intent. But the intent is generally inferred from the doing of the act. It is said by Mr. Bishop that—

"There is little distinction, except in degree, between a will to do a wrongful thing and an indifference whether it is done or not. Therefore carelessness is criminal and within limits supplies the place of the affirmative criminal intent." 1 Bishop, New Criminal Law, § 313.

And in volume 2, § 692, of his work, the learned author says:

"One who accidentally kills a man by discharging his gun at another's fowls in sport, the thing he supposes himself to be doing being a mere civil trespass, incurs the guilt of manslaughter. And it is the same when the firing of the gun which results in death is meant. simply to frighten another; or when one carelessly discharges the contents of firearms into the street."

In *State v. Myers,* 19 Iowa, 517, the defendant was tried and convicted of an assault with intent to inflict a great bodily injury, and it was held, on appeal, that recklessly shooting into a crowd of people and wounding one of them, though not intended, is criminal, and the conviction was sustained. In the case at bar the appellant's weapon was recklessly and willfully, not accidentally, discharged, and, under the authorities and the evidence, it seems clear that he was rightfully convicted of assault and battery.

Lastly, it is claimed that the court erred in its instruction as to the right to arrest without warrant. The particular ground of error relied on in this connection is that the instruction given has no application to the evidence in the case. But, in that regard, we think the learned counsel for the appellant is in error.

The judgment is affirmed.

FULLERTON and REAVIS, JJ., concur.

DUNBAR, C. J., dissents.