[No. 5500. Decided March 8, 1905.]

THE STATE OF WASHINGTON, *Respondent*, v. GEORGE MANDERVILLE, *Appellant*.[1]

TRIAL—COMMENT ON FACTS—HARMLESS ERROR—HOMICIDE—SELF-DEFENSE—ADMITTED FACT. In a prosecution for a homicide, unlawful comment of the judge, at the time of the introduction of the evidence, in telling the jury that they must remember the evidence of a certain witness respecting the identification of a knife, is not prejudicial error, where the identification of the

¹Reported in 79 Pac. 977.

knife became immaterial and unimportant through the plea of self-defense, it being an admitted fact that the killing was done by the accused with a knife similar in appearance.

SAME—INSTRUCTIONS. In a prosecution for a homicide an instruction in the nature of a comment on the evidence, in that it assumed that witnesses had testified to incriminating circumstances, is not reversible error where that is a conceded fact in the case, the killing being admitted under a plea of self-defense, and where the jury were instructed to disregard all comments on the evidence; since unlawful comment on the evidence is not ground for reversal where it affirmatively appears that it was without prejudice.

CRIMINAL LAW—HOMICIDE—SELF-DEFENSE—INSTRUCTIONS—DEFINITION OF BEATING—HARMLESS ERROR. In a prosecution for homicide, where the plea was self-defense in avoiding a beating administered by the deceased, an instruction defining a "beating" as a functional derangement such as the blackening of an eye, while subject to criticism, will not be ground for reversal, where it appears from the evidence and other instructions that the accused was not prejudiced thereby.

SAME—RIGHT TO DEFEND AGAINST BEATING. In a prosecution for a homicide, an instruction to the effect that the right of self-defense does not justify one in killing an assailant who makes an assault without a deadly weapon with intent to administer a mere beating, is not prejudicial, where, with five or six other instructions on the subject taken as a whole, the law is fairly presented.

CRIMINAL LAW—IMPROPER QUESTIONS—OTHER ACTS—HARMLESS ERROR. In a prosecution for a homicide, permitting the state to ask if the witnesses had heard of the accused's engaging in other acts of violence, is not prejudicial where the witnesses answered in the negative.

CRIMINAL LAW—HOMICIDE—MURDER IN SECOND DEGREE—KILLING IN AFFRAY—EVIDENCE—SUFFICIENCY. In a prosecution for a homicide, where the deceased was stabbed by the accused in a saloon fight and the plea of self-defense is made, there is sufficient evidence to warrant a conviction of murder in the second degree, where it appears that there had been ill-feeling between the deceased and the accused, that there was talk of fight before the affray, that the accused was armed with a knife, and the deceased was unarmed and using only his fists, that they were about equal in physical ability, that the fight was of very short duration, and the deceased was severely cut in several places, that

the accused admitted the cutting, and there was evidence that
he had expressed the hope that it would result fatally; although
there was conflict in the evidence as to how the fight started.

Appeal from a judgment of the superior court for King
county, Tallman, J., entered June 20, 1904, upon a trial
and conviction of the crime of murder in the second de-
gree.     Affirmed.

*Frank S. Griffith,* for appellant.

*Kenneth Mackintosh* and *Hermon W. Craven,* for re-
spondent.

ROOT, J.—Appellant was tried upon an information
charging him with murder in the first degree in killing one
Edward McDeavitt, and was convicted of murder in the
second degree, from which conviction he appeals to this
court.     The homicide for which he was prosecuted oc-
curred in a saloon at Tolt.     Appellant urged self-defense
in justification of the killing.     Appellant's version of the
unfortunate affair was about this:     He claims to have been
standing with his back to the bar, his elbows resting there-
upon, when he was attacked by the deceased, who struck
him a heavy blow in the face, and followed it with several
other blows and kicks, during which time appellant, with
a knife, which he took from his pocket, stabbed his as-
sailant several times, inflicting wounds from which he died
a few hours afterwards.

In the course of the trial, one Nelson, a deputy sheriff,
gave testimony as to a knife, which had been secured a
couple of days after the tragedy at the home of one James
Powers, who, it was claimed by the state, had furnished
to appellant the knife with which the latter stabbed the
deceased.     Nelson testified that said knife was shown to
the appellant, and that the latter had stated that he did not
know whether it was the same knife he had used or not, but
that it looked like it. . He also testified that appellant

said he had gotten the knife of Jim Powell, in the saloon, the evening of the fight. Over the objection of appellant's counsel, this knife was admitted in evidence. Upon the appellant's counsel taking exception to the introduction of the knife, the trial court made this remark: "I want to say to the jury now, while it is fresh in my mind, that you must remember the testimony of Mr. Nelson touching this knife." To this remark appellant's counsel took an exception "as giving added weight to the testimony of one witness in this case and commenting on the facts." Thereupon the court made the following remarks:

"The jury are further instructed that any comments which the court may have made in this matter in reference to this man's testimony is not to give this witness' testimony more weight than other witnesses. You will not pay any attention to any comments which the court makes in ruling on testimony. You are the sole judges of the facts. I am only the judge of the law and you will judge the facts yourselves. I merely wanted to call your attention to this testimony at the time."

To these remarks, appellant's counsel took an exception, on the same grounds. Although doubtless made to protect appellant's rights, yet, had the identity of this knife become in any manner material in the determination of the issues submitted to the jury, these remarks of the trial court would present a serious question; but, in view of all of the facts in the case, the question of such identity became absolutely immaterial and unimportant. The evidence of the physicians, one of whom examined the deceased prior to his death, and both of whom examined the body soon thereafter, showed that death was caused by wounds inflicted by a knife, or similar sharp instrument. The evidence of the witnesses, for both the state and the defendant, showed that the cutting was done with a knife; and the defendant himself upon the stand admitted taking

a knife from his pocket and opening it, and, from his own testimony, it was apparent that the cutting was done therewith. So, as we view it, the identity of this knife became a matter of no importance whatever in the case; and the remarks which the court made with reference thereto became incapable of causing any prejudicial results.

Numerous exceptions are taken to the instructions given. We will discuss the most strongly urged. One of these questioned instructions was in the following language:

"And in this case, if the jury believe that, prior to the publicity of the charge upon which the defendant is on trial, the defendant had always borne a good reputation in the community in which he lived for peace and quietude, then this is a fact proper to be considered by the jury with all the other evidence in the case in determining the question whether the witnesses who have testified to facts tending to criminate him have been mistaken or have testified falsely or truthfully."

An instruction almost identical with this was held to constitute error in the case of *State v. Walters*, 7 Wash. 246, 250, 34 Pac. 938, 1098, on the ground that it was a comment upon the facts in that it, in effect, assumed and told the jury that witnesses had "testified to facts tending to criminate him." The same contention is made in this case. But, after careful consideration, we are convinced that, while this instruction is open to criticism, it nevertheless does not constitute reversible error in this case. An examination of the statement of facts shows that, among other instructions which carefully guarded the rights of the defendant, the trial court gave the following:

"Under the constitution and laws of this state, the jury are the sole judges of the facts, and the judge is prohibited from commenting upon the facts. Therefore, if in ruling upon objections, or in answering questions asked by counsel for either the state or defendant, or in any other way, or under any other circumstances, the court has commented

upon the testimony in this case, the court instructs you that you are to disregard entirely any and all such comment by the court, if any has been made."

In the case of *State v. Walters, supra,* it does not appear that this warning instruction was given. Moreover, in the case at bar, we think it affirmatively appears that the comment, if it be held to be a comment, was incapable of injuring the appellant. It was an established, conceded fact in the case that there *were* facts testified to, tending to criminate appellant. The interposition of the defense of "self-defense," necessarily implied the existence of evidence tending to criminate. The existence of proof of this kind would be the only occasion for appellant urging self-defense. The killing being admitted, and self-defense being the only justification urged before the jury, we feel that appellant was not prejudiced by an inadvertent remark of the court, assuming the existence of that which alone had made it necessary or proper for appellant to present this defense. Where an error is made which violates a constitutional provision, the judgment in a criminal case will ordinarily be reversed without a showing that said error did prejudice the rights of the defendant, unless the facts and circumstances be such that it affirmatively appears that such defendant was not, and could not have been, injured thereby. In the latter case, the object of the constitutional inhibition is nevertheless attained, the result provided against has not been produced, and the reason for such restriction in that given instance ceases to obtain. The object of constitutional limitations of the character involved, as well as of all rules of law applicable to cases of this kind, is to secure to a defendant a fair, impartial trial, where substantial justice to both the defendant and the state shall be meted out, as nearly as may be possible. Important considerations of public

policy require that judgments of trial courts, in cases such as this, should not be overturned on account of errors which the record affirmatively shows to have been harmless. In the case of *State v. Surry,* 23 Wash. 655, 661, 63 Pac. 557, 559, this court, speaking by Anders, J., in referring to the case of *State v. Walters, supra,* and another case, said:

"While we are not disposed to overrule the prior decisions of this court as to the object and scope of this constitutional provision, we are not prepared to extend the rule enunciated in those cases so far as to hold that every casual, inadvertent or unnecessary remark made by the judge in reply to a proposition or suggestion of counsel constitutes a sufficient ground for reversing the judgment. In our opinion, it is only such remarks of the presiding judge during the course of a trial as might reasonably influence the mind of an ordinary juror that can justly be said to be inimical to the constitution. And whether error has been committed in a given case must, therefore, depend upon the particular facts and circumstances therein disclosed."

The appellant also takes an exception to a definition given by the trial court in the following words, to wit:

"A 'beating' or a 'mere beating,' as used in these instructions, is a functional derangement, such as the injury to an eye so as to blacken it, or even to the extent of closing it for a time."

We doubt the advisability of a trial court, in a case like this, attempting to define such expressions as "a beating," "a mere beating," "great bodily injury," or "great bodily harm,"—as they practically define themselves, and must usually be interpreted with reference to the particular case under consideration; and it is doubtful if the average juror is much enlightened by a definition given of them. In the light of the evidence in this case, and of the other instructions given, we do not believe the rights of the appellant

were infringed by the giving of this definition and instruction.

Appellant also complains of the following instruction:

"But a person upon whom assault is made, which is not felonious in its character, as one who is assaulted by another without a deadly weapon and with intent to inflict upon the person assaulted a mere beating, is not justified in killing his assailant; and a person upon whom a not felonious assault is made is not justified in repelling such an assault with a deadly weapon used in a deadly manner."

This instruction was accompanied by five or six others, explaining and bearing upon the subject of "self-defense;" and, in the light of these other instructions and the evidence in the case, we do not think appellant's criticism well founded. Because a certain instruction taken by itself is insufficient, defective, or not properly qualified, it does not necessarily follow that a case should be reversed. If the instructions, taken as a whole, fairly and fully present the law applicable to the matter in question, in such a manner as to make it clearly comprehensible to the jury, this is all that is required.

In the course of the trial, counsel for the state asked certain witnesses as to whether or not they had heard of appellant threatening, or engaging in, certain acts of violence towards certain other persons named. Each of these witnesses testified that he had not heard of any such occurrence. The asking of such questions is assigned as error, but we are unable to perceive any injury thereby to the appellant's cause.

Numerous errors are assigned in the matter of admitting or excluding evidence, and in the giving of numerous instructions and in the refusal of the court to give various instructions requested by the appellant. We have carefully examined all of these assignments, but are unable to find any prejudicial error. As they are all controlled by

well established rules and principles of law, we feel that a discussion of them would serve no useful purpose.

Appellant contends that the evidence is not sufficient to sustain the verdict and judgment. We will call attention to some of the evidence, in addition to that heretofore mentioned. Appellant had married McDeavitt's sister some ten years ago, and on account of some matters pertaining to her, and perhaps on account of other matters, there was ill-feeling between deceased and appellant. Testimony was introduced showing serious threats upon the part of each against the other. Their estrangement, however, was not so pronounced but that they took one or two drinks together in the saloon, prior to the fight, on the evening thereof. The stabbing was practically admitted by appellant upon the witness stand. He admitted taking the knife from his pocket and opening the same, and said he supposed that he stabbed McDeavitt. Two or three witnesses testified that, subsequent to the affray, he admitted the cutting and expressed the hope that he had killed McDeavitt. The evidence showed that, a few minutes prior to the affray, there was some talk about fighting —this talk being indulged in by several persons. While there was considerable conflict in the evidence as to just who did the talking, and as to the exact language employed, yet it reasonably appears that both appellant and the deceased participated in such talk. As to just how the fight commenced, the evidence is contradictory. One or more witnesses said that McDeavitt, after talking fight, "hauled back" as if about to strike a man by the name of Barclay, and that appellant stepped suddenly forward toward McDeavitt, and the fight instantly commenced. Appellant and one or more witnesses claimed that he was standing with his back to the bar, his elbows resting thereupon, when the deceased suddenly threw off his hat and coat and started for him, striking him in the face and following it up with several blows and kicks. One witness tes-

tified that appellant, some days subsequent to the affair, told him that the knife was given to him in the saloon that evening by one Jim Powell, who told him to take it and cut McDeavitt's guts out.    The fight was of very short duration.    Appellant fell to the floor and, at that instant, McDeavitt called out that he was "cut to pieces," and exposed his body showing a wound in the abdomen from which his entrails were protruding.    Three other severe 'wounds were subsequently found upon his body, all evidently made by the same instrument at the same time. The cutting took place at ten or eleven o'clock in the evening, and McDeavitt died next morning.    There was no evidence, and no contention, that McDeavitt was armed, or that he was using, or attempting to use, anything but his fists in the fight.    There were six or seven persons present in the saloon—some of them friends, and none of them, apparently, enemies of appellant.    As between appellant and McDeavitt, there appears to have been no great disparity in size or physical ability.    While there was a conflict in the testimony as to many things, yet we think that the verdict of the jury might almost be sustained upon the evidence of the appellant himself.    The credibility of the witnesses was, of course, a matter for the jury; and, in view of the strong evidence given against the defendant by numerous witnesses, all of which evidence was for the jury to weigh and consider, we think the contention as to insufficiency of evidence cannot be sustained.

We have made a careful examination of appellant's brief, and the authorities therein cited, and given earnest consideration to the able argument made by his counsel before us.    But we are unable to perceive that he has not had a fair trial, and been accorded substantial justice.

The judgment of the trial court is affirmed.

MOUNT, C. J., RUDKIN, DUNBAR, and CROW, JJ., concur.

FULLERTON and HADLEY, JJ, took no part.