[No. 9257.    Department Two.    March 3, 1911.]

## THE STATE OF WASHINGTON, *Respondent* v. J. B. WILLIAMS, *Appellant.*[1]

CRIMINAL LAW—EVIDENCE—STATEMENTS OF CODEFENDANT—ADMISSIBILITY. In a prosecution against two persons for obtaining money under false pretenses, evidence of a conversation between the prosecuting witness and one of the defendants when the other defendant was not present is admissible, if the facts show a concert of action and that both defendants were parties to the crime, although separate trials were had and no conspiracy was charged.

CRIMINAL LAW—IDENTIFICATION OF ACCUSED—SUFFICIENCY. A conviction will not be set aside for insufficient identification of the accused at the preliminary hearing by the prosecuting witness, where he sufficiently identified the accused at the trial.

CRIMINAL LAW—PRESUMPTION AS TO POSSESSION OF STOLEN PROPERTY—INSTRUCTIONS—HARMLESS ERROR. Where money was found concealed on the accused when arrested shortly after a theft, it is not error to refuse an instruction that the presumption of guilt from the possession of stolen property attaches only when the money is shown to have been stolen, and is destroyed by reasonable

[1]Reported in 113 Pac. 780.

explanation, where the jury were instructed that such presumption applies only to property identified as stolen and that they must find beyond a reasonable doubt that the accused had obtained the money charged to have been stolen.

Appeal from a judgment of the superior court for Kittitas county, Kauffman, J., entered January 31, 1910, upon a trial and conviction of grand larceny by false pretenses. Affirmed.

*Welch & Crotty* for appellant.

*E. K. Brown* and *Short & Gleysteen*, for respondent.

Chadwick, J.—The testimony of the state shows that, on the night of the 2d day of December, 1909, the prosecuting witness, Reuben Johnson, took Northern Pacific train No. 258, east-bound, leaving Seattle at 11:30 at night; that between Seattle and Auburn he picked up an acquaintance with appellant's codefendant, informed against as Brown, who represented to him that his name was Harris, that he was engaged in the butchering business in East St. Louis, that his brother had died at Everett a month or two before, that he had gone to Everett at the request of his brother's wife to assist her in fixing up his brother's affairs, that he had so far accomplished this purpose as to permit his sister-in-law to leave Everett, and that she and her children, as well as his own wife, were in a rear coach. Harris, or Brown as the case may be, further represented to Johnson that he had had some difficulty in shipping his sister-in-law's goods, a part of them being lost or misplaced at Seattle; that the property consisted of a lot of household goods and a jewelry stock of the value of about $17,000, which was in the express car. During the night Harris went to the rear of the train several times, carrying the impression to Johnson that he was looking after his folks; and he likewise went to the front part of the train two or three times, holding out to Johnson the impression that he was making inquiries about the express matter and goods mentioned above. A short time before the train

reached Cle Elum, Brown returned from the front of the train, saying that everything was all right; that the missing packages had been located.

When the train stopped at Cle Elum, appellant, wearing a trainman's cap, came into the car where Johnson and Brown were sitting and inquired for Mr. Harris. Brown identified himself as the person wanted; whereupon appellant said that he was the station agent at Cle Elum, and that he had a charge of $88 against the express matter which Harris had on the train. Thereupon Brown produced a check for about $800. This appellant refused to receive, saying that he did not carry change for such an amount of money. Brown then asked the prosecuting witness if he could pay the money. Upon being told that he did not have that amount, Brown said, "How much have you got?" Johnson said that he had $80. Brown then said that would be enough as he had found that he had $20 in money, and that if Johnson would let him have the money he would cash the check at the next station and repay him. Johnson did so, whereupon appellant and Brown left the car to make the change. As they left the car, Brown said to the prosecuting witness, "You keep my seat for me." After a few moments Johnson became suspicious and went out on the platform. Brown and appellant had disappeared. The train was ready to go and the conductor refused to hold it longer. Johnson went on to Ellensburg, returning on the next train. From Ellensburg he had communicated with the city marshal of Cle Elum, who met him, and upon his identification, arrested appellant and Brown, who were about to take the same train westbound.

It is admitted that appellant went to Cle Elum on that train, but he disclaims any acquaintance with or knowledge of Brown prior to that morning, when he met him in Cle Elum. It is shown that they had several drinks together and that they ate breakfast together. When searched, $24 was taken from appellant; but on a second search, two twenty-dollar

bills were found concealed in his hand. About eight dollars was · found on Brown, and thereafter the sheriff found two twenty-dollar bills concealed in his overcoat. The facts, so far as they pertain to appellant, are in the main denied. He maintains that he went to Cle Elum at the suggestion of a saloon man in Seattle, for whom it is shown he worked as an extra bartender; but that he found upon inquiry that there was already a surplus of bartenders in Cle Elum, and he was taking the first train back to Seattle. Testimony was also introduced tending to account for the money found in his possession, it being shown that he had pawned a ring for $100 on the day before. Appellant and Brown were informed against jointly, but appellant claimed, and was granted, a separate trial. The jury found against him upon all the disputed questions of fact, and he brings this case to us, assigning first, that the court erred in admitting the testimony of the prosecuting witness detailing the conversations and statements of his codefendant Brown, not made in his presence.

It is contended that this ruling deprived appellant of the benefit of a separate trial, inasmuch as no conspiracy is charged in the information. Such evidence is admissible whether defendants are tried jointly or separately. Otherwise, although the crime be single, if it be committed by two or more, a conviction might be avoided in every case by demanding separate trials. This question was first presented to this court in *State v. Payne*, 10 Wash. 545, 39 Pac. 157. In that case Payne was tried separately, and statements of his codefendants were put in evidence against him. While the court said in that case that only such statements had been admitted as were made in the presence of the defendant, yet the argument of the court shows that it was mindful of the broader rule. It was there said:

"The statements and acts of the appellant, or those to which he was a party, were admissible for the purpose of

showing the surroundings and circumstances which culminated in the assault. The jury were entitled to know· the state of mind of the defendant and those with whom he was so intimately associated. Such knowledge would better enable them to determine ·the facts connected with the assault itself. This evidence was therefore admissible for the purpose of placing the jury in possession of the circumstances which led up to the assault in which the fatal wound was inflicted. . . . To our minds it clearly appeared from the proofs that these persons were acting in unlawful concert. . . . This being so, the court could have rightfully opened the door as to the statements and actions of one or all of these parties much wider than it did."

See, also, *State v. McCann*, 16 Wash. 249, 47 Pac. 443, 49 Pac. 216; *State v. Dilley*, 44 Wash. 207, 87 Pac. 133. In the latter case this court adopted the expression of the trial judge as a correct statement of the law. He said:

"Her statements made at that time, if she made any, are competent evidence against her at this time. But as ·to whether or not it constitutes any evidence against the other two defendants depends upon whether or not the proof shows that there was concerted action between all three of the defendants."

This court, continuing, said:

"The parties were being tried jointly, and such evidence as was admissible against one of them was properly admitted, its applicability to the others to be thereafter controlled by proper instructions when all the evidence was introduced."

In ·the several cases cited by this court and to which we have referred, there was no charge of conspiracy made in the information, the *Dilley* case and the *McCann* case being robbery cases, and the charges being brought under the statute defining· that crime. It is thus indicated that the admissibility of such testimony cannot be resolved by looking to the form of the pleading. It must be decided by reference to the facts and circumstances of the particular case. If the defendant be charged with another, and the facts show a concert of action, a verdict will not be overthrown because it

has been necessary in the development of the case to show
the conduct and conversation of the parties, if in the end it is
made to appear that both of the defendants were parties to
the crime.    3 Ency. Evidence, 420; *Goins v. State*, 46 Ohio
St. 457, 21 N. E. 476; *State v. Montgomery*, 56 Iowa 195,
9 N. W. 120.

It is next urged that appellant was not sufficiently
identified.   This is sought to be sustained by reference to
the testimony of the justice of the peace who conducted the
preliminary examination.   He said:

"Q.   You were the justice of the peace, before whom the
preliminary examination was held in this case, Mr. Willis?
A.   Yes, sir.   Q.   Your name is S. E. Willis?   A.   Yes,
sir.   Q.   Will you tell to the jury what the prosecuting wit-
ness Reuben Johnson said, when he was called upon to testify
as to his identification of the defendant?   A.   Well, Johnson
was asked if he thought that was the man, and said 'I think
that is the man,' and Mr. Williams said, 'I object to being
held over on that kind of identification,' and Mr. Johnson said
he was the man."

If this were to be held insufficient, the evidence of the
prosecuting witness as we find it in the record was sufficient,
if believed by the jury, to warrant the verdict in this regard.

Appellant requested the following instruction:

"The court instructs the jury that it is the possession of
money shown to have been stolen, that raises the presumption
of guilt on the part of the possessor; not the possession of a
like property merely, and such presumption is destroyed
whenever a reasonable explanation is given, and is not shown
to be untrue."

This was refused, and in lieu thereof the following was
given:

"I instruct you that the mere possession of property re-
cently stolen does not of itself raise a presumption that the
party in whose possession it is found stole it, but it is a cir-
cumstance to be taken by the jury into consideration in de-
termining the guilt or innocence of the defendant, and any
reasonable explanation which the defendant may make as to

his possession of the property is also to be taken into consideration in passing upon such question. Of course this instruction applies to property which has been identified as that stolen, and not the property which merely resembles it."

It is earnestly contended that this instruction was a comment on the facts, and was prejudicial in that the court assumed that the money found in the possession of the appellant was "recently stolen." *State v. Humason*, 5 Wash. 499, 32 Pac. 111; *State v. Walters*, 7 Wash. 246, 34 Pac. 938, 1098; *State v. Payne*, 6 Wash. 563, 34 Pac. 317; *State v. Bliss*, 27 Wash. 463, 68 Pac. 87, are cited by appellant as sustaining his theory. Measured by the cases relied on, we find no vice in the instruction. Instructions must be given a reasonable interpretation, for we must assume that the words of the trial judge fall upon the ears of reasonable men, and that they will not take a single phrase and hang their verdict upon it; but that they will perform their duty and consider the instructions as a whole, keeping sight of the main issue. The jury had been instructed that they must find beyond a reasonable doubt that appellant had obtained the money charged to have been stolen, and if they did not, they should acquit. Taken as a whole, the instructions were more favorable to the appellant than the evidence warranted, and any technical objection that might be charged to a single instruction was more than overcome by the liberal interpretation of the law in behalf of appellant by the trial court.

Judgment affirmed.

Dunbar, C. J., Crow, and Morris, JJ., concur.