[No. 30931. Department Two. September 1, 1949.]

THE STATE OF WASHINGTON, *Appellant,* v. JAMES A. GARRISON *et al., Defendants,* MARY NOTICE, *Respondent.*[1]

*Charles O. Carroll* and *John L. Vogel,* for appellant.

SCHWELLENBACH, J.—This is an appeal by the state from an order dismissing defendant, Mary Notice, as a party defendant.

The amended information charged the crime of robbery, as follows:

". . . They, the said JAMES A. GARRISON, RICHARD FONG, ALLEN LEVOFF, alias ALLEN MORRIS, JOHN DOE "BOB", TOMMY FONG, and MARY NOTICE, and each of them, in the County of King, State of Washington, on or about the 4th day of September, 1948, wilfully, unlawfully and feloniously, by force and violence to the persons of Wai Yee and Fong Leung, and by putting the said Wai Yee and Fong Leung in fear of injury to their persons and against their wills, then and there did take from the presence of the said Wai Yee and Fong Leung, certain personal property of value, to-wit: lawful money of the United States, the property of the members of the Macao Club, at 511A Maynard, in Seattle, and not the property of the said defendants; . . ."

[1] Reported in 209 P. (2d) 454.

Defendants John Doe "Bob" and Tommy Fong were not apprehended. Defendant Garrison pleaded guilty to the included charge of grand larceny and testified for the state.

The Macao Club was situated at 511 Maynard in Seattle. It was a social club, limited strictly to Orientals, where gambling was indulged in. At about 3:15 in the morning of September 4, 1948, three white men (later identified as Garrison, Levoff, and "Bob") sought entrance. They were told that no white people were allowed. One of them showed a badge, said they were narcotics agents and were there to make a search, whereupon they were admitted. One man lined the patrons (between forty and fifty) against the wall and searched them. One guarded the front door, and the other the rear door. One of the men demanded the key to the office, and then ordered the safes to be opened. Guns were used; threats were made; one of the Orientals was knocked down; and they were all excited and in fear. Money was taken from both safes and from some of the patrons. Between ten thousand dollars and twenty thousand dollars was obtained. The foregoing constituted "robbery" as defined by statute.

According to Garrison's testimony, he, Levoff, and "Bob" drove that night to Portland with the money, arriving the next morning. They left Garrison off at the Imperial Hotel. There he cleaned up and took a cab to Levoff's house, where he found the other two in the basement counting the money. "Bob" took his share and left. Levoff gave Garrison approximately three thousand dollars. As Garrison was leaving, Mary Notice came in. She said that Tommy Fong told her he was supposed to get thirty per cent.

Throughout the 445 pages of testimony, there are various references to Miss Notice, and we shall attempt to recount them. Two different Chinese testified that they had seen her around Chinatown at various times. One testified that in June or July, 1948, she came to the door of the club and asked for one Frank Locke, a member. She was admitted, looked the place over for three or four minutes, and then turned around and went out. Police officer Brozovich tes-

tified that, at about 3:45 in the morning of September 4th, he saw Richard and Tommy Fong in Mary's car, coming south on Seventh south, from Jackson street. Mary was not with them. Charles Chinn went to Portland September 4th with Tommy Fong, leaving Seattle about three a. m. and arriving in Portland about ten. Chinn met Mary in front of the Broadway Theater at about eleven a. m. and drove her back to Seattle. She did not tell him what she had been doing in Portland. Garrison testified that he met her twice; once in Seattle when he was introduced to her, and the other occasion in Levoff's basement. He admitted that he never had any discussion with her of any improper or unlawful activity of any kind. She was arrested September 15th or 16th, on a charge of vagrancy. She was held five days and then released. The record does not show when she was charged with the crime under consideration.

Garrison told of a meeting on September 3rd, on Airport way, at which the robbery was planned. He, Levoff, and "Bob" and Tommy and Richard Fong were present. He testified:

"Mary Notice and Richard Fong was supposed to meet us on the highway at a certain spot and they was supposed to take the money and the guns and drive to Portland, but we failed to meet them."

Timely motion was made to strike the reference to Mary on the ground that such testimony was hearsay. Garrison admitted that he never saw Mary the day before the robbery, or that night, that she never telephoned him, and that he never got in touch with her.

So here we have a young lady who frequented Chinatown; who had, two or three months previously, appeared in the Macao Club; who permitted Tommy Fong to drive her car on the night of the robbery; and who appeared at Levoff's home in Portland the following morning, stating that Tommy Fong said he was supposed to get thirty per cent. Was there sufficient evidence to warrant submitting to the jury the question of whether or not she took part in the robbery?

Robbery is defined in Rem. Rev. Stat., § 2418 [P.P.C. § 118-201]:

"Robbery is the unlawful taking of personal property from the person of another, or in his presence, against his will, by means of force or violence or fear of injury, immediate or future, to his person or property, or the person or property of a member of his family, or of anyone in his company at the time of the robbery. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial."

Rem. Rev. Stat., § 2260 [P.P.C. § 112-13], provides:

"Every person concerned in the commission of a felony, gross misdemeanor or misdemeanor, whether he directly commits the act constituting the offense, or aids or abets in its commission, and whether present or absent; and every person who directly or indirectly counsels, encourages, hires, commands, induces or otherwise procures another to commit a felony, gross misdemeanor or misdemeanor, is a principal, and shall be proceeded against and punished as such. The fact that the person aided, abetted, counseled, encouraged, hired, commanded, induced or procured, could not or did not entertain a criminal intent, shall not be a defense to any person aiding, abetting, counseling, encouraging, hiring, commanding, inducing or procuring him."

Appellant quotes the following rule from Abbott's Criminal Trial Practice 1133, (4th ed.) 1939.

"Where there is evidence tending to show a community of design between two or more persons for the performance of an unlawful act, the acts or statements of one conspirator spoken or performed in furtherance of the objects of such conspiracy are admissible in evidence in a prosecution against another of the conspirators for the offense alleged to have resulted therefrom, although such statements were made out of the presence of the particular defendant on trial."

In support of that rule, appellant calls our attention to *State v. Dilley*, 44 Wash. 207, 87 Pac. 133; *State v. Dix*, 33 Wash. 405, 74 Pac. 570; *State v. Payne*, 10 Wash. 545, 39 Pac. 157; *State v. Williams*, 62 Wash. 286, 113 Pac. 780, and *State v. Pettit*, 74 Wash. 510, 133 Pac. 1014. We have examined

all of the above cited cases and find, in each instance, that there was direct competent evidence to connect the particular defendant with the common purpose to commit the crime.

The state has a right to put in its evidence piecemeal. It may introduce statements made by one defendant not in the presence of other defendants, but involving them. If other credible testimony is introduced showing a common purpose to commit the crime, then the statements made can be considered by the jury, even though they were made outside the presence of the particular defendants.

But suspicious circumstances alone are not sufficient to warrant using a statement against a defendant, made outside of his presence. A case fabricated of straw may not be built up against a defendant. Garrison did not even testify who made the statement that Richard Fong and Mary Notice would meet them after the robbery. He merely testified that the statement was made. The fact that Miss Notice appeared at Levoff's home in Portland shortly after the men arrived with the money is a circumstance to consider in deciding whether she was guilty or not. But it must be remembered that she was not there to collect for herself, but for Tommy Fong. At no place in the record is there any indication that she collected, or attempted to collect, a share of the loot for herself.

We do not know whether or not Mary Notice, either directly or as an accessory, took part in the robbery. However, we are convinced that there was not sufficient evidence to submit to the jury the question as to her guilt or innocence of the crime charged.

The order appealed from is affirmed.

SIMPSON, C. J., ROBINSON, JEFFERS, and GRADY, JJ., concur.