[No. 401. Decided January 12, 1893.]

THE STATE OF WASHINGTON, *Respondent*, v. E. F. HU-MASON, *Appellant*.

CRIMINAL LAW—TRIAL—AFFIDAVITS—JUDICIAL NOTICE—LARCENY — EVIDENCE — OWNERSHIP — POSSESSION OF STOLEN PROPERTY.

It is not contrary to the provisions of Code Proc., §1363, for a defendant in a criminal action to be brought to trial within less than five days after the filing of an information against him, where he has already been taken into custody before a magistrate and held for trial upon the same charge more than five days prior to his trial upon the information.

A ruling by a superior court that a certain person is the proper prosecuting attorney, will be upheld on the ground that such courts take judicial notice of the officers of the counties in which they sit.

Where a defendant charged with stealing cattle has sought to show that the person alleged in the information as owner had sold the same, evidence of conversations between the owner and parties to whom he had made a conditional sale, although not in the presence of defendant, may be given to show that such sale had been rescinded.

Upon the trial of a defendant for the larceny of certain cattle, which the evidence shows had been slaughtered by him, and the carcasses and hides fully disposed of, evidence is inadmissible that defendant had tried to conceal from the sheriff a sack containing ears cut from the heads of certain other cattle, which it was not shown had been stolen, and which were not included in the issue upon which he was being tried.

Depositions in a criminal case, tending to show the good character of defendant, are inadmissible in evidence.

Petitions addressed to the county commissioners asking the employment of special counsel to assist in the prosecution of defendant, that his bond be raised, etc., are inadmissible in evidence upon the question of the guilt or innocence of the accused.

A charge to a jury that possession of recently stolen property, if unexplained, might be taken as conclusive evidence of the guilt of the accused, is erroneous, where it is not claimed on the part of the prosecution that defendant stole the property, and the only grounds for accusing him are the facts of his taking possession of stolen property at a distance from the place where it was taken, and the circumstances surrounding the receipt and disposition of the same. (HOYT, J., dissents.)

*Appeal from Superior Court, Spokane County.*

*T. C. Griffitts*, and *Turner & Forster*, for appellant.

*S. G. Allen*, Prosecuting Attorney (*Turner, Graves & McKinstry*, special counsel), for ·The State.

The opinion of the court was delivered by

·STILES, J. —- None of the questions raised by the appellant which are based upon affidavits contained in the transcript can be passed upon by this court, since they are not made a part of the record by a statement or bill of exceptions. *Windt v. Banniza*, 2 Wash. 147 (26 Pac. Rep. 189).

Appellant was required to go to trial on the 26th day of February, 1891, upon an information filed against him on the 23d day of the same month, for the crime of stealing certain neat cattle, under Code 1881, § 833. He complains because of his trial having been fixed within five days from the date of his arrest, contrary to the provisions of Code Proc., § 1363. Appellant was actually arrested some time before February 23, and the record clearly shows that he had been held for trial by a magistrate before the information was filed. We think the fair construction of § 1363 ought to be that the arrest therein mentioned is that of being taken into custody upon the charge brought against him before the magistrate, and not the formal re-arrest made afterwards, when the information is filed.

A point was made that the information was defective because it was not signed by any officer authorized by law to

sign it.   This point was raised by a demurrer and motion
to quash, wherein it was alleged "that S. G. Allen, who
signs himself as prosecuting attorney to said information
is not the prosecuting attorney of said Spokane county
or of any other county in the State of Washington, or of
the State of Washington, and is acting therein without any
authority of law whatever." There is no finding by the
court upon this subject. The ruling of the court was, that
the motion and demurrer be overruled.   We are bound to
presume, we think, that the court found the fact to be con-
trary to the allegations contained in the demurrer and mo-
tion, and therefore to uphold the ruling.   Superior courts,
of course, take judicial notice of the officers of.the counties
in which they sit, and particularly of their own officers; and
this court will presume in all such cases that the lower court
has acted correctly in such matters. *Graham v. Anderson.*
42 Ill. 514; *Dyer v. Flint*, 21 Ill. 80; *Thompson v. Haskell*,
21 Ill. 215; *Buell v. State*, 72 Ind. 523.

The information is also attacked on the ground that it
was unconstitutional, but this matter has been so often ad-
judicated that we do not consider it necessary or proper
that we should enter upon any further review of the mat-
ter. *Hurtado v. People*, 110 U. S. 538 (4 Sup. Ct. Rep.
111, 292).

A great many errors alleged to have been committed in
connection with the taking of testimony in the case are as-
signed, a few of which are worthy of review, because of the
disposition which we shall have to make of the case.   One
Weldon A. Morris was, on or about the 5th day of January,
1891, the owner of the cattle alleged to have been stolen,
which had been running on the range some miles from
Spokane.   These cattle were suddenly missing from the
herd, and they were within a day or two traced to the
slaughterhouse of the appellant, in the suburbs of Spokane,
where it is not denied they were slaughtered as beef cattle.

There was no contention upon the part of the state that the appellant actively participated in the theft of the cattle; but it was strenuously insisted, and with success, before the jury, that he was a participant in the plan to steal them, and that when he received them into his yard at Spokane, and killed them, it was with knowledge that they had been stolen.

The first question which arises in connection with the evidence, which we deem it necessary to notice, was brought about by the court's action in permitting Morris to detail the conversations had between himself and members of the firm of Gay & Stevens, not in the presence of the appellant. There was no error in this matter, however. The defense endeavored to show, upon the cross examination of Morris, that he had made a conditional sale of his entire band of cattle to Gay & Stevens, and that the property in the cattle had thereby passed to the latter. The conversations testified to merely went to the point of showing that the conditional sale had been orally rescinded before the alleged theft, and that, therefore, the full property in the cattle was still in Morris.

The first material error which we find in the case is that committed in permitting the sheriff of the county, and other witnesses, to testify concerning certain eight head of cattle, which were not a part of the fourteen head alleged to have been stolen of Morris. The evidence in the case demonstrated that the fourteen head of cattle in controversy were killed, and their carcasses and hides fully disposed of by sale, in the usual course of the business of the firm of King & Humason, of which the appellant was a member, before the 9th day of January. On that day, however, the sheriff took possession of the appellant's slaughterhouse, and found there the carcasses of four head of cattle, and some hides, heads, horns and ears. The sheriff returned from the slaughterhouse, and, as it would

seem, without having put him under arrest, took him in his buggy, and drove back to the slaughterhouse with him. At the slaughterhouse the sheriff called his attention to the carcasses in the shed, and to the hides, and the fact that the left ear had been cut off from each head. The appellant disclaimed any ownership of these cattle, and remarked that the absence of the left ears looked bad. The sheriff further testified that the ears had been gathered up in the morning by him or his men, and that they had been put in a sack with a pair of stag horns. This sack was laid on a platform with a lot of empty sacks. Other testimony was given to show that upon noticing this sack, with the ears in it, appellant attempted to get it out of the way by putting it in a different place, and piling the empty sacks on top of it. All the testimony upon this subject was drawn out under the strenuous objection of the appellant, and under the statement by the court: "Of course, I cannot see the relevancy of it now, but it seems to me it is entirely harmless matter. If it is irrelevant, it will be stricken out." Now, the whole purpose of this testimony was apparent from the beginning, viz., to endeavor to get before the jury an impression that these four head of cattle, and four others, which were alive and in appellant's yard, were also stolen cattle, and that the appellant, knowing them to be such, had caused the ears, which contained certain marks of ownership, to be cut off and put in a sack, where they would not be likely to be observed, and that, when he found they had been noticed, he endeavored to get them out of the way. The entire transaction was wholly independent of any matter at issue in the case on trial, and there was no legal excuse for injecting it into the case. It was not a case where cattle alleged to have been stolen are found in the possession of the accused, in a herd with other cattle, which are also claimed to have been stolen. These eight head of cattle did not appear at the

yards of the appellant until after the cattle in question had been slaughtered, and completely disposed of. Moreover, it was not shown that they were stolen cattle. The court, at a subsequent stage of the case, refused to strike out this objectionable testimony, although twice applied to to do so. He promised to instruct the jury to the effect, that so far as those eight head of cattle were concerned, they should not take them into consideration in determining defendant's guilt, but no such charge was given. It is impossible to resist the conclusion that the jury probably went to their room to determine, as between the state and the appellant, in a case where the only evidence was circumstantial, with an impression that the appellant had been caught in the act of endeavoring to hide the marks of ownership of cattle recently slaughtered on his premises, an impression which it was legally improper for them to have in the case before them.

The appellant offered in evidence a large number of depositions taken in Oregon, tending to show his good character while a resident of that state. These the court rejected, correctly. We have no statute in this state permitting either party in a criminal case to make use of an ordinary deposition of an absent witness; and, as at common law the right to use depositions in criminal cases was not recognized, the action of the court in the matter was proper.

It seems that upon the arrest of appellant numerous petitions were circulated in Spokane county, addressed to the county commissioners, and asking them to employ special counsel to assist in the prosecution of appellant, to secure the raising of his bond, etc. These petitions—under what theory is not made apparent— were offered in evidence by the appellant. They certainly could have no bearing upon the question whether the appellant was guilty or innocent, and were properly rejected.

Considering the use of his books made by the appellant, we think no error was committed by the court in allowing the jury to have the entire books for their inspection.

Error is assigned upon the following charge to the jury:

"(5) The possession of stolen property, recently after the larceny thereof, is evidence tending to show such possession to be a guilty one; and if such possession is un-explained, either by direct evidence or by the attending circumstances, or by the character and habits of life of the possessor, or otherwise, it may be taken by the jury as conclusive evidence of the possessor's complicity in the larceny of the property.    The weight, however, to be attached to such evidence is for the jury alone to determine. To justify a conviction upon such evidence alone, it must appear that the possession was personal and exclusive, it must have occurred recently after the commission of the crime, and it must be unexplained.    In determining the weight to be attached to such evidence, the jury should consider all the circumstances attending such possession — the proximity of the place where the property was found to the place of the larceny; the lapse of time since the property was taken; whether the property was concealed; whether the party admitted or denied the possession; the demeanor and character for honesty of the accused; whether other persons had access to the place where the property was found; whether the accused, on different occasions, gave conflicting accounts of the manner of his acquiring possession of the property, or whether such statements were harmonious and consistent.    All these circumstances, so far as they have been proved, are proper to be taken into account by the jury, together with all the other evidence in the case, in determining how far the possession of the property by the accused, if it had been proved, tends to show his guilt."

In our judgment this was not a case for a charge to the jury that possession of recently stolen property, if unexplained, might be taken as conclusive evidence of the prisoner's guilt.    Upon the main proposition there has been much controversy, and many modifications of the old rule,

which undoubtedly prevailed, have been suggested and laid down both by courts and text writers. *State v. Hodge*, 50 N. H. 510; *Stover v. People*, 56 N. Y. 315; *Commonwealth v. Bell*, 102 Mass. 163; *Stokes v. State*, 58 Miss. 677; *Smith v. State*, 58 Ind. 340; *Hannah v. State*, 1 Tex. App. 578; *State v. Jordan*, 69 Iowa, 506 (29 N. W. Rep. 430); *Ingalls v. State*, 48 Wis. 647 (4 N. W. Rep. 785); 3 Greenl. Ev., § 31; Whart. Crim. Ev., §§ 758–760; 2 Bish. Crim. Proc., §§ 739–747; Sackett, Instruct. Juries, p. 746, § 15. But it is not necessary to pass upon this question of possession now. In this case the property was alleged and proven to have been stolen on Monday night. It was a question in the case whether it came into the hands of the appellant between four and six o'clock on Tuesday morning, or between four and six o'clock on Wednesday morning. It was not contended by the state that appellant actually stole the cattle, or that he was outside of the city of Spokane, or within sixteen miles of the place whence the cattle were taken, at the time when they were stolen. On the other hand, he did not deny that he had received the cattle at his yards, and caused them to be slaughtered and disposed of within a few hours after their receipt. Thus, there was no question about establishing possession; no question about appellant's not having been the actual thief, nor that his possession was personal and exclusive, or recently after the commission of the crime, nor of the access of persons to the place where the property was. The first question for the jury to determine was, Was the property stolen? and that was scarcely denied. There was no question of identity, no doubt of possession, and practically the only question that the jury had to determine was, did the fact of possession, together with all the other facts and circumstances adduced by the state, furnish proof sufficient to convince the jury, beyond a reasonable doubt, that the appellant was an accessory before the fact to the stealing of

the cattle? Where it is admitted by the state that the accused did not himself participate actively in the theft; that some other person took the property, and delivered it to him; that the only grounds for accusing him are the facts of his taking possession of stolen property at a distance from the place whence it was taken, and the circumstances surrounding the receipt and disposition of them — the fact of possession alone must necessarily cut a much less figure than where the accused is claimed to have been himself the person who took the property; and in such a case, if in no other, the rule laid down in Texas, California and Wisconsin, that bare possession of recently stolen property alone is not sufficient to justify a conviction, ought to prevail. If a juryman were a perfect being, the charge given might almost be said to have been without prejudice, since there was no such thing in the case as possession, standing alone; and no faithful juror could have blinded his eyes to the fact that there were many other circumstances for his consideration, both for and against the appellant. But, in the presence of so much testimony, the task of weighing it, and determining the truth from it, necessarily became a matter of great labor; and it would not be unheard of if the ordinary juror should have taken the court at its word, dropped consideration of conflicting facts and testimony, and rested a verdict of guilty upon the confessed possession, unsatisfactorily explained. This would have been to cast the burden upon the accused, which the court, in its fifth charge, told the jury must not be done. The jury should simply have been told that they were the sole judges of the facts, and of the weight to be given to each particular fact; that the possession of this property by the defendant (if it was necessary to refer to it at all), if it had been proven to them beyond a reasonable doubt that it was stolen property, was one of the facts which they were authorized to consider, with all the other facts and circum-

stances in the case, in determining the guilt or innocence of the defendant; and that if, from all these facts, they were satisfied, beyond a reasonable doubt, that the defendant had participated in planning, aiding, advising or abetting the actual thief in taking the cattle, their verdict should be that of guilty; otherwise, they ought to find for the defendant.

The judgment is reversed, and the cause remanded for a new trial.   Seventy-three pages of appellant's brief, which contain a reprint of affidavits not in the record, will not be allowed for in taxing costs of the case.

DUNBAR, C. J., and ANDERS, J., concur.

HOYT, J. (*dissenting*).—In my opinion, the instruction which is held to be erroneous by the majority of the court stated the law of the case.   Such instruction, taken as a whole, simply told the jury that the possession of property recently stolen was a circumstance which they should take into consideration with all the other circumstances in the case, and upon such consideration determine whether or not the defendant was guilty; that if, in their judgment, the single circumstance of such possession of stolen property was sufficient to convince them, beyond a reasonable doubt, of the guilt of the accused, it alone would warrant a verdict of guilty.   This is my construction of the portion of the charge to which exception is taken, and, so construed, I think it properly stated the law.   I cannot agree with the further contention of the majority that the circumstance of the possession of the stolen property was rendered immaterial by the course of the trial or by the concessions of the state.   In my opinion, the judgment should be affirmed.

SCOTT, J., concurs.