## Black v. Commonwealth.

(Decided Oct. 5, 1934.)

RAY C. LEWIS for appellant.

BAILEY P. WOOTTON, Attorney General, and DAVID C. WALLS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

The appellant, together with Matt Cobb, Larkin Cobb, and Charlie Cook, was indicted for the offense of hog stealing. On their trial, Cook and the two Cobbs pleaded guilty. Appellant pleaded not guilty. The evidence having been heard, the jury found the appellant guilty and sentenced him to serve two years in the penitentiary, at the same time sentencing his three companions to one year.

The sole ground urged for reversal is that appellant's conviction rests solely on the testimony of Cook and the two Cobbs, admittedly accomplices, and that, as there was no evidence to corroborate them, appellant was entitled to a peremptory instruction ordering his acquittal. Section 242, Criminal Code of Practice.

For the commonwealth, it was shown that on the 9th of October, 1933, Cook, the two Cobbs, and the appellant were seen riding around the roads near London in an automobile belonging to one of the Cobbs. They had been together in London that morning, seeking relief from the Federal Relief Agency, but had been unsuccessful in their quest. As evening drew on, appel-

lant suggested to the others that, if they would come back and get him later that night, they would all go out and get themselves a shoat for meat. This they agreed to do. They parted about supper time, leaving appellant at his home. About 9 o'clock that night, they came to appellant's house and got him, and the four left in the Cobb automobile, driving down the highway towards the farm of Bill Broughton. Appellant had told the Cobbs to bring with them when they came a .22 rifle, and this they had done. Mr. Broughton was raising some hogs, and his pen was not far away from the highway. When they reached the Broughton place, they got out, and appellant directed one of the party to kill one of the hogs with the rifle, which was done. Thereupon appellant with his knife stuck the hog, and, after it had bled sufficiently, the party lifted the hog over the fence surrounding the pen and laid it down by the side of the road. One of the party had driven the machine in which they had come to Broughton's place down the road to get some gas. He returned with the machine and found the rest of the party with the hog by the side of the road. The hog was loaded into the rumble seat of the car and the four got into the machine and drove off towards London. They ran out of gas again and had to be pushed towards a filling station. A flat tire added to their troubles. While they were fixing the tire, a truck drove up, and about that time the sheriff, who had been driving about the roads and had seen this automobile in which the appellant and his companions had been riding acting suspiciously near the Broughton farm, and who knew that Broughton had lost several hogs, came upon the scene. Cook and one of the Cobbs who knew the sheriff, on seeing him approach, decamped. The sheriff made inquiries as to whom the car belonged and who belonged to the party in it. Appellant said that he had come up with the truck from Manchester. The sheriff's deputy then observed appellant taking his knife out of his pocket and running it into the ground several times. The deputy sheriff then looked into the car and discovered the hog in the rumble seat. Appellant was then relieved of his knife, and fresh blood was found upon the blades and handle. Mr. Broughton identified the hog as his.

The appellant testified and admitted that he had been riding around Laurel county with Cook and the two Cobbs during the day, but denies that any proposi-

tion was made during the day about getting themselves a shoat. He says that after he had been left at his home he ate his supper and went to bed about half past 8 or 9 o'clock. He had some visitors who had come to visit his home that day, but, as he was tired, he went to bed, leaving them up. He further says that he was aroused from his sleep about 9 o'clock by the Cobbs, who came over and told him that they had bought a hog from Mr. Broughton and had in turn sold it to a butcher in London and had to deliver it early next morning and wanted appellant to come down and help them kill and dress it, for which service they would pay him $1.50. Appellant admitted that he was no butcher and had never before killed or dressed a hog for either Cook or the Cobbs. His visitors who were with him that night corroborate him to the extent that Cook and the Cobbs came for him and had some conversation with him, but these visitors do not undertake to say what the conversation was about. Appellant says that he was hard up and needed the money, and that he did not know that Cook or the Cobbs were intending to steal the hog, but thought they had bought it, and he went along simply as an employee to help them kill and dress the hog. He admits substantially all the details of what took place at the Broughton pen when the hog was killed and what took place at the time the sheriff came up and arrested him. Thus we see that the only issue in this case was whether appellant was knowingly taking part in the theft of this hog or was innocently present, as he claims. At the time of his arrest, the hog was found in the possession of appellant and his companions. It is settled that the possession by the accused of stolen property is of itself sufficient corroboration of the testimony of accomplices that the accused had stolen such property. Lewis v. Commonwealth, 242 Ky. 628, 47 S. W. (2d) 66; Little v. Commonwealth, 242 Ky. 247, 46 S. W. (2d) 97. But beyond this we have the circumstances testified to by appellant of being awakened at an unusual hour to go kill and dress a hog; of his slipping down in the dark to a hogpen without informing the owner whose house was nearby that he and his companions had come for the hog; of acting to say the least in a highly suspicious manner at the hogpen; of undertaking, when he was accosted by the sheriff, to conceal the evidence of his past activities by driving his knife into the ground to remove the blood from the blades; and of his claim-

ing to have come upon the scene in company with the truck driver and of his disowning his presence with his companions. Plainly, if we eliminate the testimony of the accomplices, there was ample evidence here that appellant was knowingly engaged in the theft of the hog.

The judgment is affirmed.