[No. 26971. Department Two. April 5, 1938.]

THE STATE OF WASHINGTON, *Respondent*, v. CHARLES
DONLEY, *Appellant*.[1]

[1]Reported in 77 P. (2d) 1006.

*P. C. Kibbe,* for appellant.

*Smith Troy, E. A. Philbrick,* and *John S. Lynch, Jr.,* for respondent.

BLAKE, J.—The defendant was charged with the crime of grand larceny as follows:

"He, the said Charles Donley, in the county of Thurston, state of Washington, on or about the twenty-fourth day of April, A. D. 1937, wilfully, unlawfully and feloniously did take, steal and lead away from the *open* pasture in Thurston county, Washington, one horse, the property of Irene Kirkland, with intent then and there to deprive and defraud the said Eileen [Irene] Kirkland thereof."

At the beginning of the trial, the word "open" was stricken from the information. From judgment entered on a verdict of guilty, defendant appeals.

The appellant first insists that the information is defective, in that it does not describe the pasture from which the horse was taken. The charge being in the terms of the statute (Rem. Rev. Stat., §§ 2601 (1), 2605 (4) [P. C. §§ 8944, 8948]), was sufficient. *State v. Wray,* 142 Wash. 530, 253 Pac. 801.

Appellant also urges that it was error to strike the word "open." The ruling finds authority in Rule IX (159 Wash. lxiii, Rem. Rev. Stat., § 308-9 [P. C. § 8676-12]). Since appellant did not claim surprise or ask for a continuance, he cannot predicate error on the ruling.

The appellant next contends that the evidence is insufficient to sustain the verdict. While the evidence is wholly circumstantial, we think it sufficient to warrant the jury in finding the appellant guilty. The salient facts are: The complaining witness is a girl,

fifteen years of age, living with her parents on a farm near Yelm. The appellant lives on a farm in that vicinity. The families were on friendly terms.

On April 24, 1937, a Saturday night, the horse in question, a mare, disappeared from an enclosed pasture. The following Tuesday afternoon, the appellant appeared at the Kirkland home. Mrs. Kirkland informed him that the mare "had been stolen;" that she thought the horse "had been taken about four-thirty or five in the morning because [she] heard [the] colt whinny at that time." After a little while, appellant asked for a deck of cards. Professing to read the cards, appellant said:

"This has been done for spite work. . . . This mare [was] stolen much earlier than what you think she was. She was stolen somewhere around nine o'clock. . . . This mare is somewhere near five miles from home . . . When you find her she may be crippled."

After some further discussion, appellant left, but returned that evening. He then said

"He thought he had found where the horse was . . . that he had seen a man that had seen someone else that was riding the horse . . . that he wouldn't give forty cents . . . for that mare now."

Appellant spent Tuesday night at the Kirkland home. The next morning, he and Irene started out to look for the mare. Traveling in a direction generally the same, they came upon the mare in a small clearing about five or six miles from the Kirkland home. Her leg was broken. There was evidence to the effect that it had been broken by a .22 caliber bullet. There was also evidence to the effect that appellant owned and carried a .22 caliber pistol. Irene testified that the horse which appellant rode when they were looking for the mare was shod only in front; that the horseshoe-nails were

oversized, and the heads left an imprint in the ground; that in looking for the mare, they followed the trail of two horses, one unshod, the other shod in front; that the foot marks of the shod horse had the same appearance as those made by the horse appellant was riding.

Irene further testified that, on the way home, appellant said to her that, if she (Irene) had gone

" . . . east of the mountains all that wouldn't have happened. . . . Don't you think you had better go east of the mountains with me now and get out of all this trouble? . . . That gypsy never lied to me. She told me something bad was going to happen to you or to something of yours."

As we understand it, appellant challenges the sufficiency of the evidence for three reasons, the first of which is that the evidence tends to prove malicious mischief rather than grand larceny. While the facts undoubtedly would support a charge of malicious mischief under Rem. Rev. Stat., § 2659 [P. C. § 8979], they are also sufficient to support the charge of grand larceny, since the element of asportation is present, under the facts established by the state's evidence.

Second, appellant contends that the evidence is insufficient to prove the intent to deprive and defraud the complaining witness of the horse. We think the evidence amply sufficient to establish that element of the offense. The complaining witness was in fact deprived of her horse, for the mare was so injured she had to be shot.

The third ground of appellant's challenge to the sufficiency of the evidence, as we understand it, is predicated upon the assumption that the testimony relative to appellant's reading the cards and relative to what the gypsy told him was inadmissible—the theory being that, without such testimony, the evidence was insufficient to connect him with the theft of the mare. The assumption, however, is without foundation. The state-

ments attributed to appellant in connection with those matters were competent and material as admissions tending to prove guilty knowledge and motive.

In connection with the introduction of evidence tending to prove motive, appellant contends that the prosecuting attorney was guilty of misconduct in referring to trips Irene had taken with appellant east of the mountains; that the reference to such trips carried the implication that appellant's relations with Irene had been improper. From our reading of the record, however, we are convinced that the only implication of improper conduct arising from the reference to these trips was injected by counsel for appellant in his objections to the evidence.

The testimony relating to the trips was competent to show motive and to illumine appellant's statements to the effect that the theft of the mare was "spite work," and if Irene had gone east of the mountains with him, "all that wouldn't have happened." For it is conceded that Irene, in the company of others, had made two trips east of the mountains with appellant. And for some time prior to the theft of the mare, it appears that appellant had been contemplating another trip east of the mountains, and had asked Irene to accompany him. Her parents, however, had refused to let her go.

Appellant assigns error as follows:

"The court erred in allowing George Keitahn to testify as to an experiment he made with a gun on a rotten horse's leg, and in conditions dissimilar to those of the alleged crime."

We do not think there is anything in the record upon which this assignment can be based. Keitahn, a deputy sheriff of Thurston county, testified that he found a bullet hole in the mare's leg at the location of the break. He was questioned as to his knowledge and

experience in the use of firearms. He was then shown appellant's pistol, and was asked if, from his knowledge and experience with firearms and their effect, he could say whether or not the hole he found in the mare's leg was made by a bullet fired from a .22 caliber gun. Thereupon counsel for appellant insisted upon his "right to cross-examine him on that." In the course of his cross-examination, counsel developed the fact that the witness had experimented by shooting a .22 caliber bullet into the leg of a horse that had been dead for a month. As we understand the record, the state did not attempt to prove the result of the experiment, but simply sought to elicit an opinion from the witness as to the effect of a bullet fired from a .22 caliber gun. Since appellant injected the result of the experiment into the record, he cannot complain because the experiment was made under conditions dissimilar to those of the hypothesis.

Appellant complains of the refusal of the court to give a requested instruction to the effect that intent to deprive and defraud the owner of her horse was an essential element of the crime charged. The substance of the request was adequately covered in the court's instruction number 3.

Appellant also excepts to the court's instruction number 7-A. It was proven that appellant had been convicted of a crime. Also, one of his witnesses admitted having been convicted of a crime. In the instruction complained of, the court said: "Evidence has been admitted of convictions of a witness and of the defendant." Then follows the usual charge that such evidence could be considered only as affecting their credibility as witnesses.

Appellant says that the court committed error, in that he particularly mentioned appellant "as one whose testimony is to be viewed with certain suspicion." We

do not think the instruction susceptible to such interpretation. Its purpose and effect was to limit the scope of evidence of other crimes. Appellant might well complain had the instruction not been given. *State v. Bezemer*, 169 Wash. 559, 14 P. (2d) 460.

There are some other assignments of error, to which we have given our attention. We think, however, they are not of sufficient merit to warrant discussion.

Judgment affirmed.

STEINERT, C. J., BEALS, ROBINSON, and MILLARD, JJ., concur.