## Fugate v. Commonwealth.

May 21, 1943.

Dennis Wooton and Vernon Faulkner for appellant.

Hubert Meredith, Attorney General, and Arthur T. Iler, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE FULTON—Affirming.

The appellant, Marcellas Fugate, was indicted jointly with his wife, Laura Fugate, his sister-in-law, Lottie Fugate, his son-in-law, Sherman Dobson, and Mack Williams on a charge of hog stealing. On a separate trial the appellant was convicted and sentenced to two years in the penitentiary. On this appeal it is contended 1) that incompetent evidence was admitted and 2) that when the incompetent evidence is eliminated the evidence was insufficient to justify a submission to the jury because there was no evidence corroborating the testimony of an accomplice, Lottie Fugate.

A hog was stolen from Silas Holliday on the night of March 29, 1942. Holliday and a neighbor found the hog hide about one-eighth of a mile from Holliday's home. Acting on information he had received Holliday procured a search warrant for the homes of the appellant, Lottie Fugate and another person. A deputy sheriff, acting under this search warrant, searched the home of Lottie Fugate and then the home of appellant. He testified he received certain information (without detailing it) from Lottie Fugate, pursuant to which he arrested appellant. Before arresting appellant, however, he searched his home and found some fresh pork. After the arrest other officers found about two-thirds of a freshly killed and skinned hog in a burlap sack concealed among the branches of a tree and suspended from a branch over a creek. This was at a point about fifty yards up the creek from the house. The carcass was approximately the size of the stolen hog. The trial court ruled that the search warrant was issued without probable cause and refused to permit its introduction in evidence as a basis for the search but nevertheless admitted the evidence obtained on the search. This is the incompetent evidence to which appellant's complaint is addressed.

Lottie Fugate testified for the Commonwealth in substance as follows: On the night in question the appellant and his wife came by her home and she went with them to find appellant's son, Fred, and, after considerable roaming around, they found him. Lottie, appellant

and his wife, appellant's son, Fred, Sherman Dobson and Mack Williams, on the way back to Lottie's home, stopped at a point about one-fourth mile from Holliday's home. Fred and Mack Williams went on to Lottie's home. Dobson said to appellant, "Let's go get us a chicken before we go home." He and appellant left the two women, going in the direction of Holliday's home. The two women waited for them. When they came back Dobson was carrying a sack of hog meat. The appellant's wife told them they would get into trouble and they both remarked several times, "When a man is going to be mean, let him be mean." The four went on to Lottie's home and some of the meat was left there. Dobson, who lived with appellant, left with the remainder of the meat and later the appellant and his wife left.

Appellant's version is that he and his wife were out with Lottie and the others on the night in question but left the others and returned home; that Dobson and Williams later came to his home with hog meat in a sack and wanted to sell it to him but he refused to buy it when they refused to tell where they got it. He says the pork found in his home when he was arrested was bought at a store by his daughter and that he knew nothing about the meat hidden in the trees. His wife and two daughters confirm him in his testimony.

The mere statement of the substance of the evidence discloses that it was sufficient to sustain the verdict if the evidence as to the finding of the meat in appellant's home and hidden in the trees was competent. If the jury believed Lottie Fugate's testimony, as they had a right to do, no other verdict than guilty could have reasonably been reached.

Conceding, arguendo, that Lottie Fugate was an accomplice it was only necessary that her testimony be corroborated by evidence tending to connect the defendant with the commission of the crime. Criminal Code of Practice, section 241. Williams v. Com., 257 Ky. 175, 77 S. W. (2d) 609. The evidence as to the meat found on appellant's premises tended to connect the appellant with the commission of the crime and was sufficient corroboration of an accomplice's testimony. Lewis v. Com., 242 Ky. 628, 47 S. W. (2d) 66; Black v. Com., 255 Ky. 618, 75 S. W. (2d) 33.

The remaining question is whether the evidence

as to the finding of the meat on appellant's premises was competent. As an original proposition it might well be argued that the evidence as to the meat found in appellant's residence was incompetent since the search was made even before appellant was arrested and by virtue of a void search warrant. But the incompetency of this evidence stemmed from the illegal search of the residence in violation of appellant's constitutional rights and, instead of standing by his objection, the appellant voluntarily testified that the meat was in his residence but was bought at a store. Thereby he waived his objection based on illegality of the search. Clark v. Com., 288 Ky. 845, 157 S. W. (2d) 485.

The evidence as to the meat found concealed in the trees fifty yards from the house was competent. We have frequently held that the words "houses" and "possessions" contained in section 10 of the State Constitution prohibiting unreasonable search and seizure includes some land adjacent to and used in connection with a residence. Extremes of such decisions will be found in Childers v. Com., 198 Ky. 848, 250 S. W. 106 (pond and garden a few yards from the residence and used in connection therewith), and in Mullins v. Com., 220 Ky. 656, 295 S. W. 987 (timber thirty yards from house). But we have also frequently held that a search warrant is not required for search of woodlands some distance from the residence. Brent v. Com., 194 Ky. 504, 240 S. W. 45; Cotton v. Com., 200 Ky. 349, 254 S. W. 1061; Bowling v. Com., 193 Ky. 642, 237 S. W. 381; Richardson v. Com., 205 Ky. 434, 266 S. W. 1. The true rule to be gathered from the many decisions on this question is that the curtilage is exempt from search without a search warrant. And, for the purposes before us, the curtilage may be defined as a piece of ground commonly used in connection with the dwelling house. See 10 Words and Phrases, Perm. Ed., page 709, defining curtilage.

There is no showing in the case before us that the land where the hog meat was found was used in connection with the dwelling—the evidence indicates the contrary—consequently a search warrant was not required to search it and the evidence obtained by the search was competent. As indicated above, this evidence was sufficient corroboration of an accomplice's testimony to justify a submission to the jury.

Affirmed.