[No. 31057.   Department Two.   June 29, 1950.]

THE STATE OF WASHINGTON, *Respondent,* v. H. B.
GILLINGHAM *et al., Appellants.*[1]

[1]Reported in 220 P. (2d) 333.

[redacted]

*A. O. Colburn* and *Moe & Huse,* for appellants.

*John Hancock,* for respondent.

HILL, J.—The principal question here presented is whether the evidence was sufficient to sustain the conviction of H. B. Gillingham and his three sons, Charles, Byron and John, on two counts of grand larceny, i. e., neat cattle stealing. Following is a summary of the evidence which must have been believed by the jury.

Lawrence Crofoot turned 74 head of neat cattle out to pasture in the spring of 1948. The range he used for that purpose was in Okanogan county, in close proximity to the range used by the Gillinghams for a similar purpose. In the fall, Crofoot was able to round up only 65 of his animals, and began a search for the missing nine. The Gillinghams were at that time engaged in hauling a considerable number of their neat cattle from the Okanogan ranch to a feed lot in Pasco; and on November 9, 1948, Crofoot and his hired man found one of his heifers in the Gillingham loading corral, with the Gillingham brand on it in addition to his own. Crofoot let the heifer out of the loading corral and put her into a larger holding pen or pasture, and went to Okanogan to report the situation to the sheriff.

The next day Crofoot met the sheriff, a deputy, and other ranchers at the Gillingham ranch. In the Gillingham holding pens or pasture they found three Hereford heifers which Crofoot identified as his, two of which bore both the Crofoot and Gillingham brands and the third only the Crofoot brand. They sheared the hair from around the brands on the ani-

mals that had both brands, and photographed them. At the sheriff's suggestion, Crofoot drove the three animals home.

The next day Crofoot, together with the sheriffs of Okanogan and Grant counties, went to a ranch at Wilson creek, in Grant county, which was owned by H. B. Gillingham (who was there at the time) but which was operated by Byron. There they discovered a roan steer which Crofoot identified as his and which bore both the Crofoot and Gillingham brands. (We gather that the Gillinghams shipped this steer back to Okanogan county and delivered it to Crofoot.)

John and Charles Gillingham and a hired man had carried on extensive branding operations on the Okanogan ranch during the first few days of July, 1948. Several witnesses testified that the condition of the hide indicated that the Crofoot brand had been placed on the three animals a considerable time before the Gillingham brand was placed on them and that the Gillingham brand had been placed on them some four to six months prior to the date of examination (November 10 and 11, 1948). They also testified that at the time of the examination the Crofoot brand was still visible on the heifers at a considerable distance, even before they were sheared.

There was, of course, evidence which, if the jury had believed it, warranted an acquittal of all defendants on all counts. We have set out only the evidence on which the conviction must rest.

Each of the four animals was made the subject of a separate count, the first three counts dealing with the heifers found on the Okanogan ranch on November 10th and the fourth with the roan steer found on the Grant county ranch on November 11th. The information charged in each count that the four defendants

". . . did . . . wilfully and unlawfully take, steal, lead and drive away and appropriate to their own use, one head of neat cattle . . . from that open range and pasture in Okanogan county, . . . which animal was then and there of the value of more than $25.00, the property of

Lawrence Crofoot, with intent to deprive and defraud the said Lawrence Crofoot thereof. . . ."

The allegations as to value were treated as surplusage, value not being material where neat cattle are taken from a range or pasture, and the jury was instructed that, to find a defendant guilty under count I, it must find: (1) that he did wilfully and unlawfully take, lead and drive away from an open range and pasture one head of neat cattle bearing the Crofoot brand (described in detail), the said animal being the property of Crofoot; and (2) that the taking was with the intent to steal the animal and deprive Crofoot of his property therein.

The jury was instructed that, to find a defendant guilty under count II, it must find (1) and (2), *supra*, and, in addition, that the animal described in count II was a different animal from the one described in count I and was taken at a time different from the time of the taking of the animal described in count I.

The instructions as to counts III and IV each required the jury to find (1) and (2), *supra*, and that the animal was a different one and the time of taking different from that in any preceding count.

All of the defendants were found guilty as to counts I and IV and acquitted as to counts II and III. (The latter count had been dismissed as to Byron.)

■ If, for a moment, we assume the sufficiency of the evidence to sustain a conviction on count I, it is obvious that the taking from the range or pasture must rest upon an inference from the facts that the Gillingham brand was placed on the Crofoot animal when the Crofoot brand was clearly visible and that the animal was found in the possession of the defendants. There is absolutely no evidence from which the jury could have found or inferred that the animals referred to in counts II, III and IV were taken from the range or pasture at different times from that at which the animal referred to in count I was taken. The conviction of all defendants on count IV must therefore be set aside because of

the failure to prove an essential element of the crime charged.

We come now to a consideration of the evidence to establish the guilt of the individual defendants. H. B. Gillingham owned both the Okanogan and Grant county ranches, but lived in Spokane. Charles was in charge of the ranch in Okanogan county and Byron of the one in Grant county. Charles and John participated in the roundups and in all of the 1948 branding operations on the Okanogan county ranch. The principal branding operations were conducted during the first four days of July that year. The evidence was that by November, 1948, the Gillingham brand had been on the two heifers and the roan steer for from four to six months.

While the defendants contended that some one else might have placed the Gillingham brand on these animals, it seems to us that there was sufficient evidence to warrant the jury in finding that, knowing that the animals already bore the Crofoot brand, John and Charles branded the two heifers and the steer, or had knowledge of their branding, and that they had the intent to deprive the owner of them. Charles and John also were in charge of selecting the animals for shipment to Pasco in November, 1948.

Although H. B. Gillingham was the one who would profit from the stealing of the cattle, we find no evidence that he had authorized or participated in the branding of them. That he was at the Grant county ranch when Crofoot and the two sheriffs arrived and identified the roan as one of the Crofoot animals, was apparently a coincidence. There was no evidence that he knew that the animal bore the Crofoot brand. The brand on that animal was indistinct and not easily seen.

At the time of the motion to dismiss as to H. B. Gillingham, the trial court expressed the view that, in the absence of any other evidence, it must be assumed that the Gillingham brand was placed on the Crofoot animals at the instance of the owner of the brand, H. B. Gillingham.

From 1895 until 1909, it was the law of this state that, in prosecutions for the stealing of any

". . . horse, mare, gelding, foal or filly, ass or mule, or any one or more head of neat cattle, or any one or more head of sheep" (Bal. Code, § 7113)

which had been permitted to run on the range, proof of possession of the animal by the person accused of stealing it was *prima facie* evidence that the accused had acquired possession thereof recently, and had the effect of throwing on the accused person the burden of explaining such possession. See Laws of 1895, chapter 173, § 1, p. 470; Bal. Code, § 7114. In *State v. Eubank* (1903), 33 Wash. 293, 74 Pac. 378, this court pointed out that the effect of that statute was to vary the general rule in larceny cases that the possession of recently stolen property is only a circumstance to be considered by the jury in connection with all the other evidence in a given case. The court there said:

"The statute therefore declares an exception to the general rule adopted by this court in ordinary larceny cases, the exception being restricted to the larceny of animals permitted to run upon the range."

The statute referred to was repealed in 1909.

While possession by the accused of animals which the jury could believe were stolen, and the fact that his brand had been placed upon them, were circumstances to be considered by the jury, they were not sufficient to support a conviction of H. B. Gillingham when there was no contention that he had participated in the taking or the branding of any of the animals and when there was no evidence that he had procured, encouraged, authorized or directed any of his sons or other employees to commit any criminal act. More persuasive evidence was held not to be sufficient to sustain a conviction in *State v. Humason*, 5 Wash. 499, 32 Pac. 111.

The trial court erred in failing to dismiss all counts as to H. B. Gillingham, and his conviction on count I is set aside.

As to Byron Gillingham, there was no evidence that he participated in any roundup on the Okanogan county ranch in 1948, or that he had any part in the branding operations. The record is barren of evidence to connect him in

any way with the heifer which was the subject of the charge in count I. The roan steer referred to in count IV was in his possession at the time Crofoot and the sheriffs went to the Grant county ranch, but, as previously stated, the evidence indicated that the Crofoot brand on that animal was not clearly visible. A witness for the state said that the Crofoot brand could not be identified until the hair around it had been sheared, and also admitted the obvious—that the brand did not show up well on the photograph taken after the shearing. It is our feeling that the evidence falls short of establishing any knowledge on the part of Byron Gillingham that the roan steer or any of the other animals with which we are here concerned bore the Crofoot brand. The trial court erred in failing to dismiss all counts as to Byron Gillingham, and his conviction on count I is set aside.

The evidence outlined was sufficient to sustain the conviction of John and Charles Gillingham on count I. The actual taking from the range need not be shown, but may be inferred from the other circumstances. *State v. Libby*, 89 Wash. 27, 153 Pac. 1058, 155 Pac. 746; *State v. Keech*, 103 Wash. 533, 175 Pac. 176; *State v. Hussey*, 188 Wash. 454, 62 P. (2d) 1350; *State v. Donley*, 194 Wash. 306, 77 P. (2d) 1006.

The appellants urge that the state relied upon the same evidence to secure convictions on counts I, II and III, and that it was inconsistent for the jury to say, in effect, "You stole critter No. 1, but did not steal critters Nos. 2 and 3."

The jury could have believed that the defendants, appellants here, stole the animals referred to in counts II and III, but that the state did not prove, as it was required to do under the instructions referred to, that those animals were taken at different times from that at which the animal referred to in count I was taken. There is no inconsistency in the verdicts in the light of the instructions given.

We now turn our attention to those assignments of error which are urged as warranting a new trial. There were some twenty-five such assignments of error, to all of which we have given careful consideration but most of which lack any substantial merit.

■ There is no showing of prejudice resulting from the failure to grant a continuance, nor is there any such showing from the failure to grant a change of venue. In line with *State v. Conner*, 107 Wash. 571, 573, 182 Pac. 602, and *State v. Burke*, 124 Wash. 632, 215 Pac. 31, we hold that these matters were within the discretion of the trial court, and we find no abuse thereof.

The appellants urge that certain evidence should have been suppressed because obtained by an unlawful search and seizure. The motion to suppress described the four animals referred to in the four counts of the information (erroneously describing the steer referred to in count IV as a heifer). Although the motion to suppress was denied, the animals were not offered in evidence, and whether the motion should have been granted seems to be academic. It is noted that, after moving to suppress the four head of cattle as evidence, the appellants complain bitterly that the animals, and not pictures of them showing the Crofoot and Gillingham brand marks, should have been introduced in evidence.

There was also a motion to suppress the pictures based upon the contention that they were secured as the result of a wrongful seizure. The holding pen or corral where the search and seizure complained of took place was a quarter of a mile from the Gillingham ranch house. (In this connection, there are two important questions which have not been raised: (1) whether the constitutional prohibitions against unreasonable searches and seizures (United States constitution, amendment 4) and against the invasion of a person's private affairs or his home (Washington state constitution, Art. I, § 7) "protect the owner of a field, a wood lot, or a pasture" or extend beyond the curtilage (*State v. Noah,* 150 Wash. 187, 272 Pac. 729; *Fugate v. Commonwealth*, 294 Ky. 410, 171 S. W. (2d) 1020; *Koth v. United States,* 16 F. (2d) 59; 47 Am. Jur. 513, Searches and Seizures, § 17); and (2) how the Gillinghams could assert constitutional rights with reference to the seizure of property in which they failed to establish any proprietary or possessory

interest (*State v. Much*, 156 Wash. 403, 287 Pac. 57; *Mathews v. Correa*, 135 F. (2d) 534, 537)).

■ We will say that, in our opinion, there was no unreasonable search or seizure. Informed by Crofoot that his heifer was in the Gillingham corral or holding pen, the sherriff certainly had reasonable grounds and probable cause to believe that a felony had been committed; he also had reasonable grounds and probable cause to believe that the three heifers "seized" were the fruits of a felony. The most that can be said is that the sheriff, Crofoot, and the others present at the "seizure" were trespassers, but that is no reason to suppress the evidence they obtained. *State v. Basil*, 126 Wash. 155, 217 Pac. 720; *Koth v. United States, supra*. It seems to us that the sheriff had ample justification for the belief that the three animals taken from the Gillingham ranch in Okanogan county on November 10, 1948, had been stolen. He had a right to seize them and to take pictures of them.

■ When the pictures were offered in evidence, the motion to suppress was not renewed and the only objection was that the pictures were not the best evidence. Having been identified by the sheriff who took them as photographs of the animals whose taking constituted the basis of the counts in the information, the pictures were properly admitted in evidence.

We find no prejudicial error in either the instructions or the rulings by the trial court on evidentiary matters which were made the bases of the assignments of error. We therefore affirm the conviction of John and Charles Gillingham on count I and reverse the conviction of H. B. and Byron Gillingham on that count, and reverse the conviction of all defendants, the appellants here, on count IV.

ROBINSON, MALLERY, and HAMLEY, JJ., concur.

SIMPSON, C. J., (dissenting in part)—I dissent from that part of the opinion which affirms.

### ON REHEARING.
[*En Banc*. Oct. 4, 1950.]

PER CURIAM.—Upon a rehearing *En Banc*, a majority of the court adheres to the opinion heretofore filed herein.