**John HAY, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Oct. 11, 1968.

J. D. Atkinson, Jr., Atkinson & Atkinson, Greenup, for appellant.

John B. Breckinridge, Atty. Gen., David Murrell, Asst. Atty. Gen., Frankfort, Jack R. Kibbey, Commonwealth's Atty., Vanceburg, for appellee.

STEINFELD, Judge.

John Hay was found guilty of violating KRS 242.230, which prohibited possessing alcoholic beverages for sale in dry local option territory. He appeals. We reverse.

A police officer in the City of Greenup, Kentucky, arrested a young man "for drinking beer on the outside" of the Youth Center. The young man implored the officer not to put him in jail. The officer inquired as to where the young man had purchased the beer whereupon he said: "I got it from John Hay out at Sand Suck" and that he had purchased beer from Hay for his father on many occasions. The officer then asked the boy's name, place of residence and family connections to which the boy replied that his name was Robert Rayburn, that he lived at Argillite, Kentucky, and that he was the son of Paul Rayburn. The officer then took the youth before a circuit judge who interrogated him and then caused to be prepared an affidavit for a search warrant of Hay's premises. KRS 242.370(1). This young man swore to the truth of the affidavit and signed it. A search warrant was issued and the officer produced it to John Hay and conducted a search. He discovered 372 cans of beer, 12 half pints of whiskey and 9 pints of wine whereupon he arrested Hay.

Before trial counsel for Hay made motion to suppress the evidence obtained on the search. Pennington v. Com., Ky., 429 S. W.2d 364 (1968). The circuit judge who issued the search warrant disqualified himself from presiding at the trial. The special judge heard Robert Rayburn who lived at Argillite, Kentucky, and who was the son of Paul Rayburn testify that he did not swear to or sign the affidavit. The circuit judge who issued the affidavit testified that the Robert Rayburn then appearing was a different young man than the one who executed the affidavit. The offi-

cer testified to the facts above related and admitted that he did not know either of the two young men and knew nothing about them. The proof also showed that there was only one Robert Rayburn living at Argillite and the identity of the young man who signed the affidavit was unknown.

The sole contention is that the underlying affidavit upon which the search warrant was issued was invalid and therefore the search warrant also was invalid.

KRS 242.370(1) provides as follows:

"(1) When an officer or any reputable citizen files an affidavit with any circuit judge, county judge, police judge or justice of the peace, describing premises or a vehicle, where alcholic beverages are sold, disposed of or possessed in violation of this chapter, the judge or justice shall by his warrant cause the premises or vehicle to be searched for the detection of any alcoholic beverages which are possessed, or kept for disposition, in violation of this chapter."

RCr 13.10 reads:

"Search Warrant; Who May Issue. A search warrant may be issued, upon affidavit sufficient under Section 10 of the Constitution of Kentucky and sworn to before the issuing officer, by a magistrate, or by any other officer authorized by statute."

Section 10 of the Kentucky Constitution says:

"Search warrants; seizure of person; provisions concerning. The people shall be secure in their persons, houses, papers and possessions, from unreasonable search and seizure; and no warrant shall issue to search any place, or seize any person or thing, without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

In King v. United States, 282 F.2d 398 (CCA 4 1960), the facts were strikingly similar to those now before us. Ruth or Rutha Douglas accompanied by two officers appeared before a United States Commissioner and made an affidavit accusing King of possessing whiskey illegally. The commissioner issued a warrant authorizing a search of King's premises. Evidence of liquor violations was found during the search. Motion was made timely to suppress that evidence. The court heard Ruth Douglas who lived in the same community as King testify that she had never heard of another Ruth or Rutha Douglas living in that community. The government was unable to produce the person who signed the warrant. The court said:

" * * *. In these circumstances it is not reasonable to require the defendant to scour the world to prove a negative. The short of it is that an oath by a person claiming a spurious identity is the sole basis for the warrant and the search. The uncontroverted facts admit of no other interpretation.

"The Fourth Amendment to the Constitution of the United States explicitly requires that 'no Warrants shall issue, but upon probable cause, *supported by Oath or affirmation * * *.*' (Emphasis supplied.) Rule 41(c) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., requires that the warrant 'shall state the grounds or probable cause for its issuance and the *names of the persons whose affidavits have been taken in support thereof.*' (Emphasis supplied.) The constitutional requirement of an oath or affirmation would be effectively eroded away if fictitious oaths were permitted. The statutory mandate that the affiant's name *shall* be stated is not satisfied by a false name, given by an unknown individual. It has been repeated many times that the requirements for issuance of a search warrant must be strictly adhered to and that the Fourth Amendment 'guaranties are to be liberally construed to prevent impairment of the protection extended.' Grau v. United States, 1932, 287 U.S. 124, 128, 53 S.Ct.

38, 40, 77 L.Ed. 212. Judge Soper, speaking for this court, recently stated:

'It has been laid down again and again that the prohibition of the Fourth Amendment against unreasonable searches and seizures must be rigidly enforced and that the procedure for the issuance of a search warrant which gives effect to the amendment must be scrupulously observed.' Baysden v. United States, 4 Cir., 1959, 271 F.2d 325, 327.

"To uphold the warrant in the instant case would be completely inconsistent with the above admonition.

"The demand of. Rule 41 for the affiant's name is in furtherance of the Fourth Amendment and is not without purpose. It has been said that someone must take the responsibility for the facts alleged, giving rise to the probable cause for the issuance of the warrant. Giles v. United States, 1 Cir., 1922, 284 F. 208, 214; United States v. Keleher, 1924, 55 App.D.C. 132, 2 F.2d 934; and the defendant should be apprised of the name of that person, Howard v. State, 1952, 199 Md. 529, 87 A.2d 161. When the affiant is cloaked in secrecy there is no one who can be held responsible.

"Another reason for naming the affiant is to enable an aggrieved person to probe and challenge the legality of the warrant. Section 41(e) of the rule makes this plain. Giving a name other than the affiant's is not compliance. It is established law that the warrant would be fatally defective if no name were mentioned. United States v. Kaplan, D.C.S.D.Ga. 1923, 286 F. 963; Howard v. State, supra. It would be an anomaly if it could be said that the rule has been obeyed when, instead of omitting the affiant's name altogether, another person's name is deceptively substituted. If it should be held that the use of a mere

sham has the effect of validating the warrant, then the aggrieved party would be frustrated in his effort to discover who the affiant is and to test the legality of the search, as authorized by the rule. The rule's remedial procedure would be vitiated.

"This is not an instance of an affiant merely misspelling his name, or using a nick-name by which he is sometimes known rather than his real name, or in the absence of fraudulent purpose adopting a name informally assumed without resort to legal proceedings to change his name. Manifestly, here is a willful effort to mask the true source of the information, contrary to the letter and spirit of the law. It must prove ineffective."

■ It should be noted that Section 10 of the Kentucky Constitution required that the warrant be "supported by oath or affirmation" and so it was with the Fourth Amendment of the United States Constitution. KRS 242.370 authorized the issuance of the warrant "When an officer or any reputable citizen files an affidavit * * *". RCr 13.10 authorized the search warrant "upon affidavit sufficient under Section 10 of the Constitution of Kentucky".[1]

On the authority of King v. United States, supra, we hold that the affidavit was invalid and that the search warrant likewise was invalid. Also see United States ex rel. Pugh v. Pate, 401 F.2d 6 CCA 7 (decided July 1, 1968).

■ The Commonwealth contends that even if the evidence had been illegally seized the conviction should not be reversed because the appellant voluntarily took the stand and admitted the presence of alcoholic beverages in his home and explained why he had it there. It relies on Fugate v. Com., 294 Ky. 410, 171 S.W.2d 1020 (1943). We held in Bruce v. Com.,

1. Re: sufficiency of affidavit for search warrant see Beets v. Com., Ky. (decided October 11, 1968).

**644**

Ky., 418 S.W.2d 645 (1967), that by attempting to explain the possession of the property illegally seized the defendant did not waive his claim that it was obtained by an illegal search. We consider the holding in Bruce to be sound and it is reaffirmed. To the extent that it and this opinion conflict with Fugate v. Com., supra, the latter is overruled.

The judgment is reversed.

MONTGOMERY, C. J., and HILL, MILLIKEN, PALMORE and WILLIAMS, JJ., concur.

OSBORNE, J., dissents.

OSBORNE, Judge (dissenting).

I don't believe in overruling a line of sound decisions in order to set free an obviously guilty bootlegger.